BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
        swestcot@bursor.com

THORNTON, DAVIS & FEIN, P.A.
Barry L. Davis (*pro hac vice*)
Daniel R. Lever (*pro hac vice*)
Aaron P. Davis (*pro hac vice*)
80 SW 8th Street, 29th Floor
Miami, FL 33130
Telephone: (305) 446-2646
Facsimile: (305) 441-2374
E-Mail: davis@tdflaw.com
        lever@tdflaw.com
        adavis@tdflaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br> v.<br><br>AT&T MOBILITY, LLC,<br><br>          Defendant. | Case No. C11-00409 CRB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Patrick Hendricks brings this action on behalf of himself and all others similarly situated against defendant AT&T Mobility, LLC ("AT&T"). Plaintiff makes the following allegations upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.  AT&T's billing system for iPhone and iPad data transactions is like a rigged gas pump that charges for a full gallon when it pumps only nine-tenths of a gallon into your car's tank. AT&T's bills systematically overstate the amount of data used on each data transaction involving an iPhone or iPad account. This was discovered by an independent consulting firm retained by plaintiff's counsel, which conducted a two-month study of AT&T's billing practices for data usage, and found that AT&T bills systematically overstate web server traffic by 7% to 14%, and in some instances by over 300%. So, for example, if an iPhone user downloads a 50 KB website, AT&T's bill would typically overstate the traffic as 53.5 KB (a 7% overcharge) to as high as 150 KB (a 300% overcharge).

2.  It gets worse. Not only does AT&T systematically overbill for every data transaction, it also bills for phantom data traffic when there is no actual data usage initiated by the customer. This was discovered by the same independent consulting firm, which purchased an iPhone from an AT&T store, immediately disabled all push notifications and location services, confirmed that no email account was configured on the phone, closed all applications, and let the phone sit untouched for ten days. During this 10-day period, AT&T billed the test account for 35 data transactions totaling 2,292 KB of usage. This is like the rigged gas pump charging you when you never even pulled your car into the station.

3.  Tests conducted by the same independent consulting firm also show that AT&T's billing system does not accurately record the time and date on which data usage occurs, which often causes charges to be posted to the wrong billing cycle. Such untimely billing of data transactions prevents customers from monitoring their data usage, and also prevents customers from utilizing their full allotment of data within the billing cycle, and causes overcharges.

FIRST AMENDED CLASS ACTION COMPLAINT           1

4. A customer cheated by a rigged gas pump may not notice the small fractions of a gallon missing from his tank, but the station owner can boost his revenues enormously by repeating the trick again and again to overcharge a large number of customers by a little bit apiece. The same is true with respect to AT&T's rigged data billings. Although AT&T's overcharges have a modest effect on an individual customer's bill, they have a huge effect on AT&T's bottom line. AT&T has 92.8 million customers. In the fourth quarter of 2010, AT&T reported its wireless data revenues increased $1.1 billion, or 27.4 percent, from the year-earlier quarter to $4.9 billion. A significant portion of those data revenues were inflated by AT&T's rigged billing system for data transactions.

**PARTIES**

5. Plaintiff Patrick Hendricks is a resident of Alameda County, California.

6. Defendant AT&T Mobility LLC ("AT&T") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and plaintiff, as well as most members of the proposed class, are citizens of states different from the state of the defendant.

8. The Court has personal jurisdiction over AT&T because (i) AT&T conducts continuous, regular and systematic business in this District, and (ii) AT&T transacts significant business within this District.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because AT&T transacts significant business within this District. Venue is also proper under 28 U.S.C. § 1391(c) because AT&T is subject to personal jurisdiction in this District.

**FACTUAL ALLEGATIONS CONCERNING PLAINTIFF PATRICK HENDRICKS**

10. Plaintiff Patrick Hendricks is an AT&T iPhone subscriber with a usage-based data plan that provides a 200 MB monthly allowance of data usage for $15 per month. Usage in excess of the 200 MB allowance is billed at $15 for each additional 200 MB, or fraction thereof.

11. AT&T's rigged billing system has systematically overstated Mr. Hendricks' data usage. For example, for the October 6, 2010 through November 8, 2010 billing period, AT&T charged Mr. Hendricks' account for 259 data transactions totaling 223 MB. Many of these charges were for phantom data transactions that either never happened or were never initiated or experienced by Mr. Hendricks. The remainder of these charges were systematically inflated in terms of the actual amount of data used.

12. Mr. Hendricks suffered economic losses as a result of AT&T's rigged billing system because (a) he incurred and paid fees to AT&T which he would not have incurred if his data usage had been accurately metered, and (b) he curtailed his data usage to attempt to avoid incurring such fees, which prevented him from making full, or nearly full, use of the 200 MB of data that he pays for every month.

## CLASS ACTION ALLEGATIONS

13. Plaintiff seeks to represent a class defined as all persons in the United States and its territories with a usage-based data plan on an AT&T iPhone or iPad account for any time period from June 29, 2007 to date (hereafter, the "Class").

14. Plaintiff also seeks to represent a subclass defined as all Class members whose accounts show a California area code or billing address (hereafter, the "California Subclass").

15. Members of the Class and California Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and California Subclass number in the millions. The precise number of Class members and their identities are unknown to plaintiff at this time but will be determined through discovery. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendants and third party retailers and vendors.

16. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

    a. whether the dispute resolution provision in AT&T's terms and conditions of service violates 47 U.S.C. § 201(b);

      b.   whether AT&T rigged its billing system to systematically overstate the amount of data used on each data transaction involving an iPhone or iPad account;

      c.   whether AT&T's billing system imposed, and continues to impose, charges for phantom data traffic when there is no actual data usage;

      d.   whether AT&T's billing system caused, and continues to cause, charges for data usage to be posted to the wrong billing cycle, thereby causing overcharges;

      e.   whether such conduct constituted a breach of contract;

      f.   whether AT&T was unjustly enriched by these billing practices; and

      g.   whether these billing practices are unjust or unreasonable charges or practices under 47 U.S.C. § 201(b).

17.    Common questions of law and fact exist as to all California Subclass members, and predominate over questions affecting only individual California Subclass members.  These common legal and factual questions include, but are not limited to:

      a.   whether AT&T's billing practices described herein are unlawful, unfair, or fraudulent business practices under California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq*.

18.    The claims of plaintiff Patrick Hendricks are typical of the claims of Class members, because each Plaintiff and Class member incurred data charges that were systematically overstated by AT&T.

19.    Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by plaintiff and his counsel.

20.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases

the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

**(For Declaratory Relief That AT&T's Dispute Resolution Terms Are Unjust and Unreasonable Under 47 U.S.C. § 201(b))**

21. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

22. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against defendant AT&T.

23. This Court has jurisdiction over this claim pursuant to the Federal Communications Act, 47 U.S.C. § 207.

24. AT&T is a common carrier engaged in interstate or foreign communication by wire or radio, and subject to the common carrier regulation set forth at 47 U.S.C. § 201, *et seq*.

25. The Federal Communications Act, 47 U.S.C. § 201(b) provides:

> All charges, practices, classifications, and regulations for and in connection with … communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful.

26. AT&T's terms and conditions of service include dispute resolution terms (hereafter, "Dispute Resolution Terms") that are never presented to the customer for signature, but which purport to require customers to arbitrate disputes only on an individual basis, to waive any right to participate in a class action, to waive any right to trial by jury, to prohibit the joinder or consolidation of any customer's claim with the claim of any other person, and to force customers to waive other important rights.

FIRST AMENDED CLASS ACTION COMPLAINT                                                5

27. AT&T's inclusion of these Dispute Resolution Terms in its terms and conditions of service is a practice in connection with a communication service that is subject to 47 U.S.C. § 201.

28. AT&T's Dispute Resolution Terms leave customers without a viable means to seek to vindicate their statutory claims set forth in Counts IV-V, below, challenging the improper data usage charges at issue in this case.

29. The improper data usage charges at issue in this action are generally $15 or less per month. The cost to file an arbitration under the Dispute Resolution Terms is currently $125 and significantly exceeds the monthly amount of the improper data usage charges at issue in this case.

30. Furthermore, the cost to retain competent counsel and experts to address the merits of the statutory challenges to AT&T's improper data usage charges would be more than 10,000 times the amount of those charges. No competent counsel would represent a plaintiff in an individual arbitration involving the relatively small improper data usage charges at issue in this case. The cost of representation would be greater than any potential recovery the individual plaintiff might seek. Indeed, the economic reality of the market for legal services is such that the claims asserted in this case, even if meritorious, will not be litigated if they cannot be pursued on a class basis. Even assuming that an individual plaintiff was able to recover his/her actual damages, plus pre-judgment and post-judgment interest, from AT&T, the upfront expenditure of time and money required to litigate the claims and the uncertainty of prevailing would make it difficult if not impossible for a victim to obtain legal counsel on a contingent fee basis or to merit the payment of an hourly fee for such services. Due to the small value of each individual consumer's claim, it would be completely unrealistic and impractical for any law firm or attorney to take this sort of case on behalf of only a single individual.

31. Plaintiff would be unable to obtain competent legal representation to assert an individual claim challenging AT&T's improper data usage charges because no competent lawyer in California or elsewhere in the United States would agree to undertake such representation. This is confirmed by the fact that millions of AT&T's customers are aggrieved and injured by AT&T's

improper data usage charges, but, on information and belief, none has been able to obtain counsel to represent them to pursue redress on an individual basis.

32.     AT&T's agreement that if the arbitrator issues an award that is greater than the value of AT&T's last written settlement offer, it will pay "twice the amount of attorneys' fees and reimburse any expenses (including expert witness fees and costs) that your attorney accrues for investigating, preparing, and pursuing your claim in arbitration ('the attorney premium')" makes no difference whatsoever.  A lawyer evaluating whether to take an individual claim for a small amount of money would anticipate that AT&T would make a settlement offer sufficient to avoid having to pay the "attorney premium."  Furthermore, plaintiff and his counsel are unaware of the attorney fee premium ever having been paid to anyone.  On information and belief, the attorney fee premium is completely illusory and has never been paid to anyone in any case.

33.     Arbitration under AT&T's Dispute Resolution Terms also allows for only "limited discovery."  Cases such as this one are extraordinarily complex, technical, difficult and uncertain and require extensive and costly discovery and expert witness testimony regarding the operation of cellular telephone data networks and billing systems.  Due to the limited nature of discovery in arbitration, an individual plaintiff would be deprived from obtaining the basic information necessary to prove his/her claims.

34.     Due to the complexity of the claims asserted in this case, it would be nearly impossible for an individual consumer to properly or adequately represent his/her own interests in any legal proceeding including small claims court or arbitration.  The likelihood that someone could win such claims without the benefit of legal counsel would be very small, particularly where, as here, AT&T would be represented by sophisticated legal counsel.

35.     Similarly, the rigor of full participation in a case of this nature creates a significant deterrent to individual claimants seeking to enforce their rights.  Not many plaintiffs would be willing, or able, to undertake such a challenge on their own.

36. AT&T's billing system for data is inscrutable to individual consumers, who would be unable to discover the bill-inflation scheme described herein without hiring an independent expert at great cost. Indeed, prior to filing this action plaintiffs' counsel retained an independent consulting firm to establish a dedicated computer system to precisely measure the quantity of data transmitted in a series of test transactions. This work was performed at a cost of over $50,000. Without incurring this expense, it would not be possible for an individual consumer to discover the over-billing. Thus it would not be possible for an individual consumer to discover that he or she is being over-billed, let alone to produce the proof required to substantiate such claims.

37. Individual consumers also typically have little knowledge regarding the laws governing consumer transactions and the potential claims and defenses that they may have. Most consumers are not capable of engaging in the legal research necessary to bring an action challenging the over-billing scheme, and even fewer are going to be sufficiently motivated to do so without the potential for class action treatment.

38. Class actions are a procedure for providing notice to consumers who may not realize that their rights have been violated, create judicial efficiency by consolidating hundreds if not thousands of claims in a single proceeding that otherwise would have had to have been brought as duplicative individual cases, if at all, and allow the pooling of resources and the spreading of litigation costs so that small individual claims in complex consumer cases become affordable and viable.

39. AT&T's Dispute Resolution Terms are unjust and unreasonable under 47 U.S.C. § 201(b) because they act effectively as an exculpatory clause, because they violate the public policy of the State of California, and numerous other states, and because they are unconscionable under the law of California, and numerous other states.

40. WHEREFORE, plaintiff seeks an order, under 28 U.S.C. § 2201, that AT&T's Dispute Resolution Terms are unjust and unreasonable, and are therefore unlawful in violation of 47 U.S.C. § 201(b).

## COUNT II

### (Common Count for Money Had and Received)

41. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

42. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against defendant AT&T.

43. AT&T has improperly billed plaintiff and Class members for data usage.

44. As a proximate result of AT&T's improper billings of data usage, AT&T has received monies from plaintiff and Class members, and AT&T has no right thereto.

45. The monies received by AT&T for these charges belong to plaintiff and Class members and must be returned to them.

46. WHEREFORE, plaintiff seeks an order requiring AT&T to:

    (a) Pay damages according to proof;

    (b) Immediately cease the improper billing of data pay per use charges;

    (c) Make full restitution of all monies wrongfully obtained; and

    (d) Disgorge all ill-gotten revenues and/or profits.

## COUNT III

### (Breach of Contract)

47. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

48. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against defendant AT&T.

49. Plaintiff and Class members are parties to a valid contract with AT&T.

50. Plaintiff and Class members have performed all of their duties and obligations under such contracts, except those excused by AT&T's nonperformance.

51. AT&T breached the contracts with plaintiff and Class members by rigging the AT&T billing system to overstate actual data usage.

FIRST AMENDED CLASS ACTION COMPLAINT      9

52. Plaintiff and Class members incurred damage as a proximate result of AT&T's breach because they paid the incorrect and improper charges and/or were prevented from using the full allotment of data usage they paid for.

53. WHEREFORE, plaintiff seeks an order requiring AT&T to:

    (a) Pay damages according to proof;

    (b) Immediately cease the improper billing of data usage;

    (c) Make full restitution of all monies wrongfully obtained; and

    (d) Disgorge all ill-gotten revenues and/or profits.

## COUNT IV

### (Unjust Enrichment)

54. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against defendant AT&T.

56. AT&T received benefits from, and at the expense of plaintiff and Class members who paid for data usage that was incorrectly and improperly billed to them.

57. It would be unjust for AT&T to retain those benefits at the expense of plaintiff and Class members.

58. WHEREFORE, plaintiff seeks an order requiring AT&T to:

    (a) Pay damages according to proof;

    (b) Immediately cease the improper billing of data usage;

    (c) Make full restitution of all monies wrongfully obtained; and

    (d) Disgorge all ill-gotten revenues and/or profits.

## COUNT V

### (Violation of 47 U.S.C. § 201(b))

59. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

...
...

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against defendant AT&T.

61.     This court has jurisdiction over this claim pursuant to 47 U.S.C. § 207.

62.     AT&T is a common carrier engaged in interstate or foreign communication by wire or radio, and subject to the common carrier regulation set forth at 47 U.S.C. § 201, *et seq*.

63.     AT&T's charges and practices of billing data usage are unjust and unreasonable in violation of 47 U.S.C. § 201(b).

64.     Plaintiff and Class members have standing to bring suit for the recovery of damages in any district court of competent jurisdiction under 47 U.S.C. § 207, because they incurred damage as a proximate result of AT&T's violation of 47 U.S.C. § 201(b) because they paid incorrect, improper and overstated charges, and/or were prevented from using the full allotment of data usage they paid for.

65.     WHEREFORE, plaintiff seeks an order, under 47 U.S.C. § 206, requiring AT&T to pay the full amount of damages sustained in consequence of AT&T's violations, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

## COUNT VI

**(Unlawful, Unfair, and Fraudulent Business Practices in Violation of the Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq.*)**

66.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

67.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against defendant AT&T.

68.     AT&T's billing practices described herein are unlawful, unfair and fraudulent business practices in violation of Bus. & Prof. Code §§ 17200 *et seq.*

69.     Plaintiff and members of the California Subclass have suffered an injury in fact resulting in the loss of money or property as a result of AT&T's unlawful, unfair and fraudulent

business practices, because they paid incorrect, improper and overstated charges, and/or were prevented from using the full allotment of data usage they paid for.

70. WHEREFORE, plaintiff seeks an order, pursuant to Bus. & Prof. Code § 17203, (a) permanently enjoining AT&T from continuing to engage in the billing practices described herein, (b) ordering AT&T to reverse charges for overstated data usage that remain pending or unpaid, (c) ordering AT&T to make full restitution of all monies obtained as a result of the rigged billings that overstated data usage, and (d) to disgorge all ill-gotten revenues and/or profits obtained as a result of these billing practices.

## PRAYER FOR RELIEF

71. WHEREFORE, plaintiff, on behalf of himself and on behalf of the members of the proposed Class and California Subclass, prays: (a) for all forms of relief set forth above, (b) for an order certifying the proposed Class and California Subclass and appointing plaintiff and her undersigned counsel of record to represent the proposed Class and California Subclass, (c) for punitive damages, (d) for costs of suit herein; (e) for both pre- and post-judgment interest on any amounts awarded, (d) for payment of reasonable attorney's fees, and (e) for such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.


Dated:  June 7, 2011            BURSOR & FISHER, P.A.


By: _____/s/_____
                 L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700
E-Mails: ltfisher@bursor.com
              swestcot@bursor.com

FIRST AMENDED CLASS ACTION COMPLAINT                                                   12

BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail:  scott@bursor.com

THORNTON, DAVIS & FEIN, P.A.
Barry L. Davis (*pro hac vice*)
Daniel R. Lever (*pro hac vice*)
Aaron P. Davis (*pro hac vice*)
80 SW 8th Street, 29th Floor
Miami, FL 33130
Telephone:  (305) 446-2646
Facsimile: (305) 441-2374
E-Mails: davis@tdflaw.com
         lever@tdflaw.com
         adavis@tdflaw.com

Attorneys for Plaintiff