1  BURSOR & FISHER, P.A.
   Scott A. Bursor (State Bar No. 276006)
2  369 Lexington Avenue, 10th Floor
   New York, NY 10017
3  Telephone:  (212) 989-9113
   Facsimile:  (212) 989-9163
4  E-Mail: scott@bursor.com

5  BURSOR & FISHER, P.A.
   L. Timothy Fisher (State Bar No. 191626)
6  Sarah N. Westcot (State Bar No. 264916)
   2121 North California Blvd., Suite 1010
7  Walnut Creek, CA 94596
   Telephone: (925) 482-1515
8  Facsimile: (925) 407-2700
   E-Mail: ltfisher@bursor.com
9         swestcot@bursor.com

10 THORNTON, DAVIS & FEIN, P.A.
   Barry L. Davis (*pro hac vice*)
11 Daniel R. Lever (*pro hac vice*)
   Aaron P. Davis (*pro hac vice*)
12 80 SW Eighth Street, 29th Floor
   Miami, Florida 33130
13 Tel: (305) 446-2646
   Fax: (305) 441-2374
14 Email: davis@tdflaw.com
           lever@tdflaw.com
15         adavis@tdflaw.com

16 *Attorneys for Plaintiff*

17                    UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

19

20
   PATRICK HENDRICKS, on behalf of himself        Case No. C11-00409 CRB
21 and all others similarly situated,

22                                    Plaintiff,   **PLAINTIFF'S MEMORANDUM OF
                                                   LAW IN OPPOSITION TO AT&T
23                                                 MOBILITY LLC'S MOTION TO
          v.                                       COMPEL ARBITRATION AND TO
24                                                 STAY CASE**

25 AT&T MOBILITY LLC,                              Date:  September 23, 2011
                                                   Time: 10:00 a.m.
26                                                 Courtroom 8

27                                   Defendant.    Hon. Charles R. Breyer

28

1
2

# TABLE OF CONTENTS

Page No.

I.      INTRODUCTION ...................................................................................................1

II.     AT&T'S ARBITRATION AGREEMENT IS UNENFORCEABLE
        BECAUSE IT WOULD IMPOSE EXCESSIVE COSTS THAT WOULD
        PREVENT MR. HENDRICKS FROM EFFECTIVELY VINDICATING
        UNWAIVABLE STATUTORY RIGHTS ...................................................................2

        A.     Applicable Legal Standards ..........................................................................2

               1.     The Supreme Court's *Green Tree* Standard ...................................2

               2.     The *Armendariz* Standard ................................................................4

        B.     AT&T's Arbitration Agreement Violates The *Armendariz* Rule By
               Requiring Hendricks To Bear Arbitral Expenses He Would Not Bear
               In A Court Action .........................................................................................6

        C.     AT&T's Arbitration Agreement Violates The *Green Tree* Rule By
               Making It "Prohibitively Expensive" For Hendricks To Arbitrate His
               Claims ...........................................................................................................7

        D.     *Concepcion* Does Not Affect The Analysis Under *Green Tree* and
               *Armendariz* ..................................................................................................9

III.    AT&T'S ARBITRATION AGREEMENT IS UNENFORCEABLE
        BECAUSE IT IS UNCONSCIONABLE ...............................................................11

        A.     Procedural Unconscionability .....................................................................12

        B.     Substantive Unconscionability ...................................................................13

        C.     The Unenforceable Arbitration Provisions Are Not Severable ..................14

IV.     AT&T IS BARRED FROM ENFORCING THE ARBITRATION
        AGREEMENT BASED ON THE DOCTRINE OF UNCLEAN HANDS .............14

        A.     Applicable Legal Standard ..........................................................................14

        B.     AT&T Has Committed Repeated Deceptive And Inequitable Conduct
               Impairing Customers' Arbitration Rights ...................................................15

V.      MR. HENDRICKS' CLAIMS FOR INJUNCTIVE RELIEF UNDER THE
        CLRA AND UCL ARE INARBITRABLE .............................................................16

VI.     CONCLUSION .....................................................................................................18

22
23
24
25
26
27
28

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AT&T MOBILITY LLC'S MOTION TO
COMPEL ARBITRATION AND TO STAY CASE
CASE NO. C11-00409 CRB

i

## TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*ACORN v. Household International, Inc.*,
   211 F.Supp.2d 1160 (N.D. Cal. 2002)......................................................................6

*American Modern Home Ins. Co. v. Gallagher*,
   2008 WL 357120 (S.D. Cal. Feb. 7, 2008)..........................................................14

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
   24 Cal.4th 83 (2000).....................................................................1, 4, 7, 12

*Arnold v. Goldstar*,
   2002 WL 1941546 (N.D. Ill. Aug. 22, 2002) ........................................................3

*Assadd v. American National Ins. Co.*,
   2010 WL 5416841 (N.D. Cal. Dec. 23, 2010) ....................................................5

*AT&T Mobility LLC v. Concepcion*,
   131 S.Ct. 1740 (2011) ..........................................................................9, 10, 11

*AT&T Mobility II, LLC v. Pestano*,
   2008 WL 682523 (N.D. Cal. Mar. 7, 2008) ...................................................4, 5, 6

*Blain v. Doctor's Company*,
   222 Cal.App.3d 1048 (1990)............................................................................14

*Broughton v. Cigna Healthplans of California*,
   21 Cal.4th 1066 (1999).............................................................................2, 16, 17

*Brown v. Ralphs Grocery Co.*,
   2011 WL 2685959 (Cal. Ct. App. July 12, 2011) ..............................................18

*Caban v. J.P. Morgan Chase & Co.*,
   606 F.Supp.3d 1361 (S.D. Fla. 2009)..................................................................4

*Circuit City Stores v. Adams*,
   279 F.3d 889 (9th Cir. 2002) ..............................................................................5

*Cruz v. PacifiCare Health Sys., Inc.*,
   30 Cal.4th 303 (2003)..................................................................................2, 16

*D.C. v. Harvard-Westlake School*,
   176 Cal.App.4th 836 (2009) ...............................................................................4

*Dale v. Comcast Corporation*,
   498 F.3d 1216 (11th Cir. 2007) ..........................................................................3

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AT&T MOBILITY LLC'S MOTION TO
COMPEL ARBITRATION AND TO STAY CASE
CASE NO. C11-00409 CRB

ii

*Discover Bank v. Superior Court,*
    36 Cal.4th 148 (2005) ............................................................................................ 9

*Dunham v. Environmental Chemical Corp.,*
    2006 WL 2374703 (N.D. Cal. Aug. 16, 2006) ...................................................... 6

*Ellenburg v. Brockway, Inc.,*
    763 F.2d 1091 (9th Cir. 1985) .............................................................................. 14

*Flores v. Transamerica HomeFirst, Inc.,*
    93 Cal.App.4th 846 (2001) ................................................................................... 13

*Gelow v. Central Pacific Mortgage Corp.,*
    560 F.Supp.2d 972 (E.D. Cal. 2008) ..................................................................... 6

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) ................................................................................................. 2

*Green Tree Fin. Corp. v. Randolph,*
    531 U.S. 79 (2000) ......................................................................................... 1, 2, 5

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ........................................................................................... 9, 10

*Horton v. California Credit Corp.,*
    2009 WL 2488031 (S.D. Cal. Aug. 13, 2009) ...................................................... 6

*In re American Express Merchants' Litig.,*
    634 F.3d 187 (2d Cir. 2011) ......................................................................... 2, 3, 5

*In re Checking Account Overdraft Litigation,*
    734 F.Supp.2d 1279 (S.D. Fla. 2010) ................................................................... 4

*In re Universal Service Fund Tel. Billing Practices Litig.,*
    370 F.Supp.2d 1135 (D. Kan. 2005) ................................................................... 16

*Ingle v. Circuit City Stores,*
    328 F.3d 1165 (9th Cir. 2003) ............................................................................... 5

*Jackson v. S.A.W. Entertainment Ltd.,*
    629 F.Supp.2d 1018 (N.D. Cal. 2009) .................................................................. 5

*Jacobs v. Universal Development Corp.,*
    53 Cal.App.4th 692 (1997) ................................................................................... 14

*Kristian v. Comcast Corp.,*
    446 F.3d 25 (1st Cir. 2006) .................................................................................... 3

*Mendez v. Palm Harbor Homes, Inc.*,
    111 Wash.App.446 (2002) ................................................................ 3

*Mercuro v. Superior Court*,
    96 Cal.App.4th 167 (2002) ............................................................... 4

*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group*,
    2011 WL 2565363 (Cal. Ct. App. June 29, 2011) ............................. 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ......................................................................... 2

*Morris v. Redwood Empire Bancorp*,
    128 Cal.App.4th 1305 (2005) ..................................................... 12, 13

*Parada v. Superior Court*,
    176 Cal.App.4th 1554 (2009) ......................................................... 13

*Patterson v. ITT Consumer Financial Corp.*,
    14 Cal.App.4th 1659 (1993) ............................................................. 9

*Popovich v. McDonald's Corp.*,
    189 F.Supp.2d 772 (N.D. Ill. 2002) .................................................. 3

*Shankle v. B-G Maint., Inc.*,
    163 F.3d 1230 (10th Cir. 1999) ........................................................ 3

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ......................................................................... 2

*Shloss v. Sweeney*,
    515 F.Supp.2d 1068 (N.D. Cal. 2007) ............................................ 14

*Sutherland v. Ernst & Young LLP*,
    768 F.Supp.2d 547 (S.D.N.Y. 2011) ............................................ 3, 4

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) .......................................................... 5

*Trujillo v. Apple Computer, Inc.*,
    578 F.Supp.2d 979 (N.D. Ill. 2008) ................................................ 16

*Unilogic, Inc. v. Burroughs Corp.*,
    10 Cal.App.4th 612 (1993) ............................................................. 15

*Wells Fargo & Co. v. Stagecoach Properties, Inc.*,
    685 F.2d 302 (9th Cir. 1982) .......................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RULES AND OTHER AUTHORITIES**

Civil Code § 1670.5................................................................................................1, 11, 14

Civil Code § 1751...................................................................................................18

## I.      INTRODUCTION

Within the past month, 26 customers initiated arbitrations against AT&T.  The American Arbitration Association (AAA) demanded that each of those customers pay a filing fee of $3,350.  In each case, AT&T refused to pay or to reimburse the filing fee.  This is reality.  *See* Bursor Decl. ¶¶ 18-23.  The "cost-free" arbitration described in AT&T's motion is pure fantasy.

Within the past month, AT&T's Associate General Counsel, Neal S. Berinhout, has written four letters to AAA administrative personnel repeatedly urging them to refuse to administer arbitration demands filed by AT&T customers.  This is reality.  *See* Bursor Decl. Exhs. 1, 5, 8 and 9. The "consumer-friendly" arbitration process described in AT&T's motion is a fairy tale.

Plaintiff Patrick Hendricks alleges that AT&T's bills systematically overstate data usage, which caused him to incur a $15 charge for excess data usage on his November 2010 bill.  *See* 1st Am. Complaint ¶¶ 10-12 (Docket No. 34).  He seeks to recover that $15, and an injunction requiring AT&T to "cease the improper billing of data usage." *See id.* ¶¶ 46(b), 53(b), 58(b) and 70.  To file an individual arbitration, Mr. Hendricks would be forced to pay a $3,350 filing fee which AT&T contends it need not reimburse.  *See* Bursor Decl. ¶¶ 18-23.  It would cost Mr. Hendricks approximately $290,504.11, exclusive of attorneys' fees, to pursue these claims in an individual arbitration, *id.* ¶ 16, plus an additional $1.1 million in attorneys' fees, *id.* ¶¶ 17, 52-54.

The evidence submitted herewith demonstrates that Mr. Hendricks would face excessive costs that would prevent him from effectively vindicating his claims in an individual arbitration. Those costs render the arbitration agreement unenforceable under *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000), *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 110-11 (2000), and under general state law unconscionability principles codified at California's Civil Code § 1670.5.

AT&T is also barred from enforcing the arbitration agreement by the doctrine of unclean hands, due to AT&T's repeated deceptive and inequitable conduct impairing customers' arbitration rights, including misrepresenting arbitral fees, repeatedly refusing to pay arbitral fees, and repeatedly attempting to intimidate AAA and corrupt the arbitration process by encouraging AAA to refuse to administer customers' arbitration demands.  *See* Bursor Decl. ¶¶ 18, 28-36.

Lastly, Mr. Hendricks' claims for injunctive relief under the CLRA and UCL are inarbitrable. *See Broughton v. Cigna Healthplans of California,* 21 Cal.4th 1066, 1079–80 (1999) (holding claims for injunctive relief brought under the CLRA are not subject to arbitration), and *Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303, 316 (2003) (holding claims for injunctive relief brought under the UCL are not subject to arbitration).

**II.    AT&T'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT WOULD IMPOSE EXCESSIVE COSTS THAT WOULD PREVENT MR. HENDRICKS FROM EFFECTIVELY VINDICATING UNWAIVABLE STATUTORY RIGHTS**

**A.    Applicable Legal Standards**

**1.    The Supreme Court's *Green Tree* Standard**

An agreement requiring mandatory arbitration of state or federal statutory claims is enforceable only "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000). *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (same); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (same); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238 (1987) (permitting arbitration of Exchange Act claims based on a finding that arbitration would be "adequate to vindicate Exchange Act rights").

*Green Tree* recognized that "large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." 531 U.S. at 90. Under *Green Tree*, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

The Second Circuit recently applied *Green Tree* in *In re American Express Merchants' Litig.*, 634 F.3d 187 (2d Cir. 2011) ("*Amex II*"). In that case, a putative class of merchants asserted antitrust claims against American Express, which then moved to compel arbitration under an agreement that prohibited class actions. The merchants opposed the motion on the ground that individual arbitration would be cost-prohibitive, and submitted an affidavit from an economist, Gary L. French, Ph.D., stating that it would be economically irrational for a merchant to pursue individual arbitration since

1  "the likely costs and complexity of an expert economic study concerning liability and damages"

2  would likely exceed any individual merchant's recovery.  *Id.* at 198.  Based on Dr. French's

3  testimony, the Second Circuit held "the cost of plaintiffs' individually arbitrating their dispute with

4  Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the

5  antitrust laws." *Id.* at 197.  The Second Circuit also made clear that its decision was not based on the

6  application of any blanket rule against class action waivers:

7          In this case, the record demonstrates that the size of any potential
           recovery by an individual plaintiff will be too small to justify the
8          expense of bringing an individual action.  Moreover, we do not
           conclude here that class action waivers in arbitration agreements are
9          per se unenforceable.  We also do not hold that they are per se
           unenforceable in the context of antitrust actions.  Rather, we hold that
10         each case which presents a question of the enforceability of a class
           action waiver in an arbitration agreement must be considered on its
11         own merits.

12  *Id.* at 199.

13          Other courts have similarly applied *Green Tree* to invalidate arbitration agreements that

14  would impose excessive costs.  *See, e.g.*, *Dale v. Comcast Corporation*, 498 F.3d 1216, 1224 (11th

15  Cir. 2007) (applying *Green Tree* to invalidate arbitration agreement where "the cost to an individual

16  plaintiff of vindicating the claim when compared to the plaintiff's potential recovery" was too great);

17  *Kristian v. Comcast Corp.*, 446 F.3d 25, 52 (1st Cir. 2006) (applying *Green Tree* to invalidate

18  arbitration agreement because plaintiff would be required to bear "all of his or her own costs,

19  including the costs of experts and attorneys"); *Shankle v. B-G Maint., Inc.,* 163 F.3d 1230, 1235

20  (10th Cir. 1999) (holding unenforceable an arbitral fee-splitting provision that would cost an

21  employee between $1,875 and $5,000 to resolve his statutory claims); *Popovich v. McDonald's*

22  *Corp.*, 189 F.Supp.2d 772, 778 (N.D. Ill. 2002) (applying *Green Tree* to hold that arbitration costs

23  were prohibitive where affidavit established such costs would likely be $48,000 to $120,000); *Arnold*

24  *v. Goldstar*, 2002 WL 1941546, at *10 (N.D. Ill. Aug. 22, 2002) (holding costs that would likely

25  exceed $2,500 rendered the arbitration clause unenforceable); *Mendez v. Palm Harbor Homes, Inc.*,

26  111 Wash.App.446, 465 (2002) (holding arbitration clause unenforceable where plaintiff would have

27  been required to spend up front well over $2,000 to try to vindicate his rights under a contract to buy

28  a $12,000 item in order to resolve a potential $1,500 dispute); *Sutherland v. Ernst & Young LLP*, 768

1   F.Supp.2d 547, 551 (S.D.N.Y. 2011) (invalidating arbitration agreement where plaintiff's "maximum

2   potential recovery would be too meager" to justify arbitration costs and expert fees required for

3   individual prosecution); *In re Checking Account Overdraft Litigation*, 734 F.Supp.2d 1279, 1289

4   (S.D. Fla. 2010) (invalidating arbitration agreement because "[c]ompared to the potential recovery,

5   the costs of engaging in arbitration [and expert fees] … is too great to justify individual actions by

6   consumers"); *Caban v. J.P. Morgan Chase & Co.*, 606 F.Supp.3d 1361, 1371 (S.D. Fla. 2009)

7   (invalidating arbitration agreement where plaintiff's "potential recovery is too small to justify the

8   costs" of arbitration).

9            **2.      The *Armendariz* Standard**

10            In *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000), the

11   California Supreme Court manifested a similar concern for litigants' ability to effectively vindicate

12   their claims.  *Armendariz* held that when an employer imposes mandatory arbitration of employee

13   claims under California's Fair Employment and Housing Act (FEHA), "the arbitration agreement or

14   arbitration process cannot generally require the employee to bear any *type* of expense that the

15   employee would not be required to bear if he or she were free to bring the action in court."  24

16   Cal.4th at 110-11 (italics in original).  *Armendariz* is based on the recognition that "certain rights –

17   unwaivable statutory rights or fundamental rights delineated in constitution or statutory provisions –

18   are so important in our society that their enforcement should not be chilled by the threat of expenses

19   unique to arbitration."  *D.C. v. Harvard-Westlake School*, 176 Cal.App.4th 836, 861 (2009).  Federal

20   and state courts in California have applied the *Armendariz* rule to a number of statutory and common

21   law claims, including claims under California's Consumers Legal Remedies Act (CLRA) and Unfair

22   Competition Law (UCL).  *See, e.g.*, *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 180 (2002)

23   "[W]e see no reason why *Armendariz*'s 'particular scrutiny' of arbitration agreements should be

24   confined to claims under FEHA. … [*Armendariz*] itself suggests its minimum requirements for

25   arbitration of statutory claims apply to claims under the Consumer[s] Legal Remedies Act."); *AT&T*

26   *Mobility II, LLC v. Pestano*, 2008 WL 682523, at *6 (N.D. Cal. Mar. 7, 2008) (applying *Armendariz*

27   to invalidate arbitration agreement affecting a UCL claim).

28

1        *Armendariz* and *Green Tree* both recognize that arbitration costs can present significant

2    barriers to the vindication of statutory rights.  But there is a subtle difference between the standards

3    they establish to determine when such costs invalidate an arbitration agreement.  *Green Tree* requires

4    the party seeking to avoid arbitration to show that it would be "prohibitively expensive," but does not

5    specify what types of arbitral costs would meet that standard, and leaves that issue for resolution on a

6    case-by-case basis.  *See Green Tree*, 531 U.S. at 522 ("How detailed the showing of prohibitive

7    expense must be … is a matter we need not discuss … in this case.").  *Armendariz*, on the other

8    hand, is more precise.  *Armendariz* established a categorical rule that prohibits any *type* of arbitral

9    cost the consumer would not also bear in a court action.

10       Although the Second Circuit applied the generic *Green Tree* standard in *Amex II*, 634 F.3d

11   at 197, federal courts in the Ninth Circuit have consistently applied the more precise *Armendariz*

12   categorical cost rule, particularly where claims under California statutes were at issue.  *See, e.g.*, *Ting*

13   *v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (applying *Armendariz* to invalidate an arbitration

14   agreement "because it imposes on some consumers costs greater than those a complainant would

15   bear if he or she would file the same complaint in court"); *Ingle v. Circuit City Stores*, 328 F.3d

16   1165, 1177 (9th Cir. 2003) (invalidating arbitration agreement that would require payment of a filing

17   fee that "is not the '*type* of expense that the employee would be required to bear' in federal court")

18   (italics in original); *Circuit City Stores v. Adams*, 279 F.3d 889, 893-94  (9th Cir. 2002) ("We find

19   the arbitration agreement at issue here virtually indistinguishable from the agreement … in

20   *Armendariz*.  …  The DRA also requires the employee to split the arbitrator's fees with Circuit City.

21   This fee allocation scheme alone would render an arbitration agreement unenforceable.") (footnote

22   omitted); *Assadd v. American National Ins. Co.*, 2010 WL 5416841 *6 (N.D. Cal. Dec. 23, 2010)

23   (applying *Armendariz* to invalidate an arbitration agreement with a "cost-shifting scheme" that could

24   put plaintiff "on the hook for substantial forum costs in the event the employer prevailed … [which]

25   might well deter an action and chill the exercise of statutory rights"); *Jackson v. S.A.W.*

26   *Entertainment Ltd.*, 629 F.Supp.2d 1018, 1031 (N.D. Cal. 2009) (applying *Armendariz* to invalidate

27   arbitration agreement that did not "expressly provide" that defendant would "pay for all costs that are

28   unique to arbitration"); *AT&T Mobility II, LLC v. Pestano*, 2008 WL 682523, at *6 (N.D. Cal. March

7, 2008) (applying *Armendariz* to invalidate arbitration clause in AT&T's dealer agreements where the cost-splitting provisions would improperly impede the "ability to vindicate rights under" Business & Professions Code § 17200); *Dunham v. Environmental Chemical Corp.*, 2006 WL 2374703, at \*9 (N.D. Cal. Aug. 16, 2006) ("The Commercial Rules would require Dunham to pay half of the arbitrator's expenses, a fee not usually associated with litigation.  As such, the  cost-sharing provision of the Commercial Rules is clearly unconscionable under *Armendariz*."); *ACORN v. Household International, Inc.*, 211 F.Supp.2d 1160, 1173 (N.D. Cal. 2002) ("[T]he *Armendariz* court specifically noted that the party imposing arbitration may not impose any type of cost not incident to a judicial action.  Defendants' arbitration agreement transgresses this limitation by imposing on Plaintiffs a share of the entire arbitration cost, including the cost of the arbitrator's fee."); *Horton v. California Credit Corp.*, 2009 WL 2488031, at \*7 (S.D. Cal. Aug. 13, 2009) (invalidating arbitration agreement where "cost-splitting agreement imposes arbitrator's fees on Plaintiffs as a condition of access to the arbitration forum"); *Gelow v. Central Pacific Mortgage Corp.*, 560 F.Supp.2d 972, 982 (E.D. Cal. 2008) (applying *Armendariz* to invalidate an arbitration agreement that "requires the employee to pay half of the fees and expenses of the arbitrator if the employee has brought a claim against the employer based on the contract or common law").

**B.    AT&T's Arbitration Agreement Violates The *Armendariz* Rule By Requiring Hendricks To Bear Arbitral Expenses He Would Not Bear In A Court Action**

AT&T's motion describes "cost-free arbitration" under an agreement that purports to require AT&T to pay "all filing, administration, and arbitrator fees."  AT&T Mem. at 4:4-7 (Docket No. 35).  But in reality, the terms providing for "cost-free arbitration" are largely illusory.  They come with two giant loopholes that AT&T routinely exploits to avoid paying arbitration filing fees.  The first giant loophole is that AT&T can avoid paying arbitration fees by alleging the customer has breached the agreement, and that such breach excuses AT&T's obligation to pay the costs of arbitration.  AT&T has made this argument to avoid paying arbitral filing fees in 26 cases within the past 30 days.  *See* Bursor Decl. ¶ 30 and Exh. 9 (letter from AT&T's Associate General Counsel to AAA alleging that each of the 26 claimants "materially breached" their contracts with AT&T, and "[a]ccordingly, as a matter of law, that breach excuses AT&T from any obligation to pay the costs of

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE
CASE NO. C11-00409 CRB

6

arbitration").  The second giant loophole is that whenever a customer seeks injunctive relief that might have a "monetary impact" on AT&T (or other parties) that exceeds $75,000, AT&T asserts the payment of costs is governed by AAA default rules.  AT&T also made this argument 26 times within the past 30 days.  *See* Bursor Decl. ¶ 32 and Exh. 9 (letter from AT&T's Associate General Counsel to AAA stating: "The request for reimbursement [of AAA filing fees] is improper … [because] these claims for injunctive relief are for greater than $75,000 in value.").

Because of these two giant loopholes, Mr. Hendricks would be required to advance  AAA filing and administrative fees of at least $4,600, *see* Bursor Decl. ¶ 34, and would also be responsible for half of the arbitrator's compensation, *see* AAA Commercial Arbitration Rule R-50 ("All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties ….").  *See also* Bursor Decl. ¶¶ 38-41 and Exh. 9 (letter from AT&T's Associate General Counsel to AAA asserting that claimants are "responsible for the $3,350 filing fee, as well as half of the arbitrator's compensation," which AT&T refuses to reimburse).   The possibility that Mr. Hendricks ultimately might recover these costs does not affect the analysis.  *See Armendariz*, 24 Cal.4th at 110 ("[I]t is not only the costs imposed on the claimant but the *risk* that the claimant may have to bear substantial costs that deters the [effort] … to vindicate the[] statutory right … and therefore chills the exercise of that right.") (italics in original).

Mr. Hendricks would not have to bear any of these fees in federal court.  The arbitration agreement therefore violates the *Armendariz* rule and cannot be enforced.

### C.  AT&T's Arbitration Agreement Violates The *Green Tree* Rule By Making It "Prohibitively Expensive" For Hendricks To Arbitrate His Claims

The arbitration agreement also violates the *Green Tree* rule because individual arbitration of the claims in this action would cost Mr. Hendricks approximately $290,504.11 in AAA fees, arbitrator compensation, and expert fees, summarized in the table below.

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE
CASE NO. C11-00409 CRB

7

**Expenses To Pursue Individual Arbitration Of Claims Asserted In Hendricks v. AT&T
(Excluding Attorneys' Fees & Expenses)**

| Expense Category | Amount | Hendricks' Share | Hendricks' Expense | Reference |
|---|---|---|---|---|
| AAA Filing Fee | $3,350.00 | 100.00% | $3,350.00 | Bursor Decl. ¶¶ 18-23 |
| AAA "Final Fee" | $1,250.00 | 100.00% | $1,250.00 | *Id.* ¶ 23 |
| Arbitrator Compensation | $303,450.00 | 50.00% | $151,725.00 | *Id.* ¶¶ 38-41 |
| Expert Expense For Pre-Suit Investigation | $74,179.11 | 100.00% | $74,179.11 | *Id.* ¶¶ 45-46 |
| Expert Fees For Additional Analysis And Testimony | $60,000.00 | 100.00% | $60,000.00 | *Id.* ¶¶ 50-51 |
| **Total** | | | **$290,504.11** | |

Notably, these costs include $74,179.11 already incurred (advanced by plaintiff's counsel) for a presuit investigation that included a two-month study by an independent consulting firm to substantiate the claim that AT&T's billing system systematically overstates data traffic.  *See* 1st Am. Complaint ¶ 1 ("AT&T bills systematically overstate web server traffic by 7% to 14%, and in some instances by over 300%.").  *See also* Declaration of Colin B. Weir (describing the methodology of the study); Bursor Decl. ¶¶ 45-49 (discussing the presuit investigation necessary to bring Mr. Hendricks' claims).  It would have been impossible for Mr. Hendricks to commence an individual arbitration on these claims without doing a similar investigation in advance of filing.  And if he was unwilling or unable to incur this expense, he never would have discovered the basis for these claims. Nor would he have been able to file an individual arbitration, or any type of action, to assert these claims.

These costs also include arbitrator compensation Mr. Hendricks would have to pay under AAA Commercial Rules R-50, R-52 and R-54, *see* Bursor Decl. ¶¶ 38-41.  Arbitrator compensation was estimated based on actual arbitrator invoices from a comparable AAA proceeding.  *See* Bursor Decl. Exh. 3 (arbitrator invoices billing $101,150 in a comparable case).  Since AT&T would likely

request the appointment of a panel of three arbitrators instead of just one, this expense would likely be tripled, to $303,450, leaving Mr. Hendricks responsible for half of the total amount, or $151,725. *Id.* ¶ 41.  In addition, Mr. Hendricks' counsel estimates that he would incur attorneys' fees of approximately $1.1 million, plus an additional $40,000 in attorneys' expenses, based on the actual attorneys' fees incurred in a comparable AAA arbitration.  *See* Bursor Decl. ¶¶ 52-54.

It would be economically irrational for Mr. Hendricks to advance any of these costs to dispute a $15 charge.  In *Patterson v. ITT Consumer Financial Corp.*, 14 Cal.App.4th 1659 (1993), for example, the court recognized that "[i]n a dispute over a loan of $2,000 it would scarcely make sense to spend a minimum of $850 just to obtain a participatory hearing."  *Id.* at 1666.  The ratio of arbitral costs ($290,000) to potential recovery ($15) is even more skewed here.  These costs are "prohibitively expensive" in violation of *Green Tree*, and they would preclude Mr. Hendricks from effectively vindicating his statutory rights.

### D.   *Concepcion* Does Not Affect The Analysis Under *Green Tree* and *Armendariz*

The Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) does not address the *Green Tree* or *Armendariz* rules.  Nor does it address whether excessive or unique arbitral costs would prevent a litigant from effectively vindicating statutory rights.  These issues were not presented in *Concepcion*.

*Concepcion* concerned a different issue:  whether California's *Discover Bank* rule was preempted by the Federal Arbitration Act (FAA).  The *Discover Bank* rule was characterized as a blanket rule that prohibited class action waivers "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Concepcion*, 123 S.Ct. at 1746, *quoting Discover Bank v. Superior Court*, 36 Cal.4th 148, 162 (2005).  The precise holding of *Concepcion* was that the *Discover Bank* rule was preempted by the FAA:

> Because it "stands as an obstacle to the accomplishment and execution
> of the full purposes and objectives of Congress," *Hines v. Davidowitz,*

312 U.S. 52, 67, 61 S.Ct. 399, 85 L .Ed. 581 (1941), California's
*Discover Bank* rule is preempted by the FAA.

*Concepcion*, 131 S.Ct. at 1753.

The Supreme Court's decision in *Concepcion* did not address the *Green Tree* or *Armendariz* doctrines for at least four reasons.  *First*, AT&T's Petition for Writ of Certiorari in *Concepcion* expressly eliminated these issues by framing the question presented as follows:

> Whether the Federal Arbitration Act preempts States from conditioning the enforcement of an arbitration agreement on the availability of particular procedures – here, class-wide arbitration – ***when those procedures are not necessary to ensure that the parties to the arbitration agreement are able to vindicate their claims.***

*AT&T Mobility LLC v. Concepcion*, Petition for Writ of Certiorari at i (Bursor Decl. Exh. 15) (emphasis added).  By framing the question that way, AT&T expressly avoided any discussion of the *Green Tree* and *Armendariz* doctrine.  And there was no reference to those doctrines anywhere in the opinion of the Court, or in the concurring and dissenting opinions.

*Second*, the consumers' claim in *Concepcion* was quite different from Mr. Hendricks' claim. The Concepcions claimed AT&T's offer of a free phone was fraudulent because AT&T charged them $30.22 sales tax on the retail value of the free phone.  That is significantly different from Mr. Hendricks' claim because the Concepcions were seeking monetary relief against a one-time charge. There is no discussion of injunctive relief anywhere in *Concepcion*.  Mr. Hendricks, on the other hand, seeks injunctive relief against an ongoing practice of overbilling for data use.  And that request for injunctive relief fundamentally changes the rules with respect to the costs of arbitration, according to both AT&T and AAA.  Thus the AAA filing and administrative fees for Mr. Hendricks' claims amount to $4,600, which AT&T contends it is not required to pay or to reimburse under the parties' agreement.  *Compare Concepcion*, 131 S.Ct. at 1745 ("AT&T must pay all costs for nonfrivolous claims") *with* Bursor Decl. Exh. 2 (letter from AT&T's Associate General Counsel to AAA stating: "The request for reimbursement [of AAA filing fees] is improper … [because] these claims for injunctive relief are for greater than $75,000 in value.").

*Third*, another significant distinction is that Mr. Hendricks' claims could not be discovered or presented in any forum without a substantial presuit investigation to test the accuracy of AT&T's

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE
CASE NO. C11-00409 CRB

10

1    billing system for data, which was done at a cost of $74,179.11.  *See* Weir Decl. ¶ 53.  Without that

2    study, Mr. Hendricks never would have discovered the basis for his claims.  The Concepcions, on the

3    other hand, could readily understand that they were charged sales tax on their free phone, and could

4    discover and assert their claims without the assistance of an expert.

5            *Fourth*, there was no evidentiary record in *Concepcion* about the potential costs of arbitration.

6    Indeed, there was no evidentiary record at all at the trial court level.  The District Court simply

7    applied the *Discover Bank* rule to invalidate the arbitration agreement based on the presence of a

8    class action waiver, despite concluding that the arbitration process for the Concepcions would have

9    been "'quick, easy to use' and likely to 'promp[t] full or ... even excess payment to the customer

10   *without* the need to arbitrate or litigate.'"  *Concepcion*, 131 S.Ct. at 1745 (quoting the District

11   Court's findings).  The evidentiary record here shows that is not the case for Mr. Hendricks.

12           For these reasons, *Concepcion* is distinguishable on its facts, on the claim asserted, and on the

13   evidentiary record presented at the trial court level.  And because of its unique facts, *Concepcion*

14   does not address whether a claimant seeking injunctive relief and subject to extensive arbitral costs

15   could effectively vindicate his statutory rights as required under *Armendariz* and *Green Tree*.

16   *Concepcion* did not overrule those longstanding doctrines – nor even mention them.

17   **III.    AT&T'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT IS**
18   **UNCONSCIONABLE**

19           The standards articulated in *Green Tree* and *Armendariz* preclude enforcement of arbitration

20   agreements that would prevent a litigant from effectively vindicating his claims in an arbitral forum.

21   And those standards do not depend on any finding of unconscionability.  Nevertheless, courts

22   sometimes shoehorn the *Green Tree* / *Armendariz* standards into an unconscionability analysis.

23           California has codified the common law doctrine of unconscionability at Civil Code

24   § 1670.5(a), which states that "[i]f the court as a matter of law finds the contract or any clause of the

25   contract to have been unconscionable at the time it was made the court may refuse to enforce the

26   contract …."  Section 1670.5(b) provides that "[w]hen it is claimed that … the contract or any clause

27   thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present

28

1   evidence as to its commercial setting, purpose, and effect to aid the court in making the

2   determination."[1]

3          Both procedural and substantive unconscionability must be present for a court to refuse to

4   enforce a contract.  *Armendariz*, 24 Cal.4th at 114.  "But they need not be present in the same degree.

5   Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the

6   contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness

7   of the substantive terms themselves.  In other words, the more substantively oppressive the contract

8   term, the less evidence of procedural unconscionability is required to come to the conclusion that the

9   term is unenforceable, and vice versa."  *Id.* (internal quotation marks omitted).

10         A.    **Procedural Unconscionability**

11         Procedural unconscionability concerns the manner in which the contract was negotiated and

12   the circumstances of the parties at that time.  *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th

13   1305, 1319 (2005).  It focuses on factors of oppression and surprise.  *Id.*  The oppression component

14   arises from an inequality of bargaining power of the parties to the contract and an absence of real

15   negotiation or a meaningful choice on the part of the weaker party.  *Id.*

16         The procedural unconscionability analysis usually begins and ends with a determination that

17   a contract is one of adhesion.  A contract of adhesion is "a standardized contract, which, imposed and

18   drafted by the party of superior bargaining strength, relegates to the subscribing party only the

19   opportunity to adhere to the contract or reject it."  *Armendariz*, 24 Cal.4th at 113.  There is no

20         ///

21         ///

22         ///

23         ///

24         ///

25   _____

26   [1] Although *Concepcion* held the *Discover Bank* rule was preempted by federal law, general state law
     doctrine relating to unconscionability remains applicable to arbitration agreements.  *See Mission
     Viejo Emergency Medical Associates v. Beta Healthcare Group*, 2011 WL 2565363, at *7 n.4 (Cal.
27   Ct. App. June 29, 2011) ("Defendants appear to argue that *AT&T* [*v. Concepcion*] essentially
     preempts all California law relating to unconscionability.  We disagree, as the case simply does not
28   go that far.").

1   question that the AT&T Terms of Service are a contract of adhesion.[2]  That alone is sufficient to

2   establish procedural unconscionability.  *See, e.g.*, *Flores v. Transamerica HomeFirst, Inc.*, 93

3   Cal.App.4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a finding of

4   procedural unconscionability.").

5        A procedural unconscionability analysis may also include consideration of the factors of

6   surprise and oppression.  *Parada v. Superior Court*, 176 Cal.App.4th 1554, 1571 (2009).

7   "Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is

8   otherwise beyond the reasonable expectation of the weaker party."  *Id.*  "While arbitration may be

9   within the reasonable expectations of consumers, a process that builds prohibitively expensive fees

10  into the arbitration process is not."  *Id.*  These additional factors of procedural unconscionability are

11  present here because an AT&T customer would not expect to be required to pay $4,600 in filing and

12  administrative fees to arbitrate a claim for injunctive relief – especially since the contract of adhesion

13  specifies a fee of $125 and does not mention a different fee in case an injunction is sought.

14           **B.    Substantive Unconscionability**

15       A provision is substantively unconscionable if it involves contract terms that are so one-sided

16  as to shock the conscience, or that impose harsh or oppressive terms.  *Morris*, 128 Cal.App.4th at

17  1322.  Substantive unconscionability may be shown if the disputed contract provision falls outside

18  the nondrafting party's reasonable expectations.  Here, there are at least three provisions that render

19  AT&T's arbitration agreement substantively unconscionable.  *First* and foremost, the excessive

20  arbitral fees.  *See* Part II, above.  *Second*, the restrictions on the arbitrator's ability to grant injunctive

21

22  _____
    [2] The process by which AT&T contends it made an agreement to arbitrate with Mr. Hendricks was
    not a simple one.  This is best illustrated by the fact that AT&T submitted six declarations with

23  hundreds of pages of exhibits to explain how this particular contract of adhesion was made.  *See*
    Declaration of Lilian L. Chan (Docket No. 35-1) (discussing AT&T's process for "telephonic orders

24  for wireless service and cellular phones"); Declaration of Chenell Cummings (Docket No. 35-2)
    (discussing AT&T's "IVR system" for obtaining electronic signatures); Declaration of Adam Gill

25  (Docket No. 35-4) (discussing AT&T's "routine business policies and procedures by which
    customers may place a telephone order for wireless service"); Declaration of Senthil Kumar (Docket

26  No. 35-5) (discussing "technical procedures concerning how … customers were presented with and
    able to accept" AT&T's terms and conditions); Declaration of Romi Manchanda (Docket No. 35-6)

27  (discussing what "would have been provided" to Mr. Hendricks at the retail store); Declaration of
    Theodore Weiman (Docket No. 35-7) (lawyer's declaration attaching materials from AT&T's

28  website and AAA rules available from the AAA website).

1  relief.  *See* Part V, below.  And *third*, the prohibition on class arbitration in combination with arbitral

2  costs that would preclude Mr. Hendricks from seeking to assert his claims.

3           **C.    The Unenforceable Arbitration Provisions Are Not Severable**

4           Civil Code § 1670.5(a) requires consideration of whether the unconscionable provisions are

5  severable, or if the court "may so limit the application of any unconscionable clause as to avoid any

6  unconscionable result."  The unenforceable provisions here are not severable from the remainder of

7  the arbitration clause because the terms of the agreement specifically preclude severance.  AT&T

8  Terms of Service at 18 (Manchada Decl. Exh. 1, Docket No. 35-6) ("If this specific provision is

9  found to be unenforceable, then the entirety of this arbitration provision shall be null and void.").

10  **IV.    AT&T IS BARRED FROM ENFORCING THE ARBITRATION AGREEMENT
11          BASED ON THE DOCTRINE OF UNCLEAN HANDS**

12          **A.    Applicable Legal Standard**

13          The unclean hands doctrine "requires that those seeking its protection shall have acted fairly

14  and without fraud or deceit as to the controversy in issue."  *Ellenburg v. Brockway, Inc.*, 763 F.2d

15  1091, 1097 (9th Cir. 1985).  "In California, the doctrine of unclean hands may apply to legal as well

16  as equitable claims and to both tort and contract remedies."  *Jacobs v. Universal Development Corp.*,

17  53 Cal.App.4th 692, 699 (1997).  "[T]he doctrine of unclean hands is not one but a number of

18  disparate doctrines, dependent for their substance upon the context of application.  It is largely

19  shaped by the human practices and public policies involved in the situation."  *Blain v. Doctor's

20  Company*, 222 Cal.App.3d 1048, 1059 (1990).  To prevail on an unclean hands defense, a litigant

21  must demonstrate that "(1) the [other party's] conduct is inequitable and (2) the conduct relates to the

22  subject matter of its claims."  *Shloss v. Sweeney*, 515 F.Supp.2d 1068, 1082 (N.D. Cal. 2007).

23          "Bad intent is the essence of the defense of unclean hands."  *Wells Fargo & Co. v.

24  Stagecoach Properties, Inc.*, 685 F.2d 302, 308 (9th Cir. 1982).  "[T]he conduct at issue need not be

25  criminal or even warrant legal proceedings but need only violate equitable standards that relate to the

26  subject matter of the complaint to invoke the unclean hands doctrine."  *American Modern Home Ins.

27  Co. v. Gallagher*, 2008 WL 357120, at *4 (S.D. Cal. Feb. 7, 2008).  "[A] determination whether the

28  doctrine of unclean hands applies to a particular claim is a question of fact."  *Id.* at *5; *see also id.*

(holding unclean hands defense inappropriate for determination on summary judgment); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal.App.4th 612, 623 (1993) (affirming trial court's decision to submit unclean hands defense to the jury).

### B.   AT&T Has Committed Repeated Deceptive And Inequitable Conduct Impairing Customers' Arbitration Rights

AT&T has committed at least four types of deceptive and inequitable conduct specifically related to customers' arbitration rights that support an unclean hands defense. *First*, AT&T represents that customers can initiate an arbitration with a $125 filing fee, and does not disclose that AAA would in fact require the consumer to pay at least $4,600 in filing and administrative fees, plus half of the arbitrator compensation, in any case seeking injunctive or "non-monetary" relief. This misrepresentation appears in the agreement itself. *See* AT&T Terms of Service at 16-17 (Manchada Decl. Exh. 1, Docket No. 35-6). And though the agreement specifically discusses injunctive relief, *see id.* at 18, it does not disclose that customers would be required to pay $4,600 in AAA fees to seek such relief.

*Second*, although the agreement represents that "AT&T will pay all filing, administration, and arbitrator fees for any arbitration," *id.* at 17, in practice AT&T refuses to pay or reimburse such fees. *See* Bursor Decl. ¶¶ 30, 32 and 38-41.

*Third*, AT&T's refusal to pay or reimburse fees creates a Catch-22 that deprives customers of their arbitration rights. AAA will not appoint an arbitrator until its fees are paid, and will suspend any arbitration for nonpayment of fees. *See* AAA Commercial Arbitration Rule R-54, Weiman Decl. Exh. 2, at 18 (Docket No. 35-7). When AT&T refuses to pay AAA fees, as it often does, customers have a contractual right to have an arbitrator determine whether that refusal constitutes a breach of the agreement, and to seek an order from the arbitrator requiring AT&T to honor its contractual obligation to pay the fees. *See* AT&T Terms of Service at 14 ("AT&T and you agree to arbitrate all disputes and claims between us.") (Manchada Decl. Exh. 1, Docket No. 35-6); *id.* at 16 ("If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the notice address."). But if the fees are not paid, AAA will not appoint an arbitrator. This makes it impossible for the customer to enforce their arbitration rights, because they cannot get access to a decisionmaker

with authority to order AT&T to pay the fees.  Thus, in practice, the arbitration clause gives AT&T an option – not an obligation – to arbitrate.  An option AT&T can avoid simply by withholding payment of fees.  This exact scenario is playing out right now in two pending cases, *Astrid Mendoza v. AT&T, Inc. and AT&T Mobility LLC*, AAA Case No. [*not yet assigned*], and *Deborah L. Schroeder v. AT&T, Inc. and AT&T Mobility LLC*, AAA Case No. [*not yet assigned*].  Both Mendoza and Schroeder filed arbitrations with AAA together with notices that they were unable to pay the $3,350 filing fee, and requested that AT&T pay that fee in accordance with the terms of the parties' agreement.  *See* Bursor Decl. ¶ 35.  When AT&T refused, Mendoza and Schroeder requested that AAA appoint an arbitrator to make a determination as to AT&T's contractual obligation to pay the fee.  *Id.* ¶¶ 36-37.  AAA refused to take a position on which party would be required to pay the fees, and refused to appoint an arbitrator until the fees were paid.  *Id.* ¶ 37.

*Fourth*, AT&T also impairs customers' arbitration rights by pressuring and intimidating AAA administrators to violate AAA rules and to delay or impede AAA's administration of customers' arbitration demands.  AT&T's inequitable conduct in this regard has been known since at least as early as 2005.  *See, e.g.*, *In re Universal Service Fund Tel. Billing Practices Litig.*, 370 F.Supp.2d 1135, 1141 (D. Kan. 2005) ("counsel for AT&T used AT&T's economic power to successfully persuade the AAA to prematurely bend its own rules"); *see also Trujillo v. Apple Computer, Inc.*, 578 F.Supp.2d 979, 989 (N.D. Ill. 2008) (detailing AT&T Associate General Counsel Neal S. Berinhout's submission of false declarations, misrepresentations and numerous instances of perjury in connection with AT&T's motion to compel arbitration against a customer, which the court described as "vexatious[]" and "bad faith" conduct).  This type of conduct is ongoing, as within the past month Mr. Berinhout has written four letters to AAA administrative personnel urging AAA to refuse administration of customers' demands for arbitration.  *See* Bursor Decl. Exhs. 1, 5, 8 and 9.

## V.   MR. HENDRICKS' CLAIMS FOR INJUNCTIVE RELIEF UNDER THE CLRA AND UCL ARE INARBITRABLE

Mr. Hendricks seeks injunctive relief under the CLRA and UCL.  *See* 1st Am. Compl. ¶ 70; Fisher Decl. Exh. 1.  Those claims are inarbitrable.  *See Broughton v. Cigna Healthplans of California,* 21 Cal.4th 1066, 1079-80 (1999) (holding claims for injunctive relief brought under the

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE
CASE NO. C11-00409 CRB

16

CLRA are not subject to arbitration), and *Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303, 316

(2003) (holding claims for injunctive relief brought under the UCL are not subject to arbitration).

As the California Supreme Court explained, "the evident purpose of the injunctive relief

provision of the CLRA is … to [protect] the general public in danger of being victimized by the same

deceptive practices as the plaintiff suffered." *Broughton*, 21 Cal.4th at 1080.  Mandatory arbitration

of injunctive relief claims would frustrate that purpose.

> If an arbitrator issued an injunction under the CLRA prohibiting a
> certain deceptive practice, and if that injunction were imperfectly
> enforced, another consumer plaintiff also seeking to enjoin the practice
> would have to relitigate it.

*Id.* at 1081.

AT&T's arbitration agreement was specifically designed to ensure this problem would arise.

Thus it includes an explicit restriction on the ability of an arbitrator to grant injunctive relief:

> The arbitrator may award declaratory or injunctive relief only in favor
> of the individual party seeking relief and only to the extent necessary
> to provide relief warranted by that party's individual claim.

AT&T Terms of Service at 19 (Manchada Decl. Exh. 1, Docket No. 35-6).  Thus, if Mr. Hendricks

proves that AT&T is systematically overbilling millions of California customers for data use, AT&T

would argue the arbitrator is powerless to enjoin such unlawful billing with respect to anyone other

than Mr. Hendricks alone.  Indeed, AT&T's Associate General Counsel has described the limitation

on the arbitrator's power exactly this way:

> The clause limits the injunctive relief that may be pursued in
> arbitration.  For example, if an individual customer alleged that AT&T
> had raised the rates charged for his service without providing him the
> notice required by our Wireless Customer Agreement, he could seek an
> injunction requiring that the company cease charging **him** the higher
> rates without providing the required notice.  But he could not seek an
> injunction mandating that the company roll back its rates with respect
> to its entire hundred million customer base.

July 28, 2011 Letter from AT&T's Associate General Counsel, Neal S. Berinhout to AAA at 4,

Bursor Decl. Exh. 5.

Under *Broughton* and *Cruz*, Mr. Hendricks' claims for injunctive relief are inarbitrable.[3] Even if they were arbitrable, the provision purporting to limit the arbitrator's ability to grant injunctive relief would invalidate the agreement as an unlawful waiver. *See* Civil Code §1751 ("Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void.").

## VI.     CONCLUSION

For the foregoing reasons, AT&T's motion to compel arbitration should be denied based on the current evidentiary record.  In the alternative, if the court believes the current evidentiary record is insufficient, plaintiff respectfully requests a reasonable opportunity for discovery and an evidentiary hearing to provide further evidence in opposition to this motion.

Respectfully submitted,

Dated:  August 8, 2011                        BURSOR & FISHER, P.A.

Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail:  scott@bursor.com

By_____/s/_____
          Scott A. Bursor

L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596
Telephone:  (925) 482-1515
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com
            swestcot@bursor.com

---

[3] The California Court of Appeal recently confirmed the continuing viability of *Broughton* and *Cruz* post-*Concepcion*.  *See Brown v. Ralphs Grocery Co.*, 2011 WL 2685959 (Cal. Ct. App. July 12, 2011) (distinguishing *Concepcion* on the ground that "*Broughton* and *Cruz* dealt with arbitrability and not with class and representative action waivers").

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY CASE
CASE NO. C11-00409 CRB

18

1

2    THORNTON, DAVIS & FEIN, P.A.
     Barry L. Davis (*pro hac vice*)
3    Daniel R. Lever (*pro hac vice*)
     Aaron P. Davis (*pro hac vice*)
4    80 SW Eighth Street, 29th Floor
     Miami, Florida 33130
5    Tel: (305) 446-2646
     Fax: (305) 441-2374
6    Email:  davis@tdflaw.com
              lever@tdflaw.com
7             adavis@tdflaw.com

8    *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28