1    Donald M. Falk (CA Bar No. 150256)
     dfalk@mayerbrown.com
2    MAYER BROWN LLP
     Two Palo Alto Square, Suite 300
3    3000 El Camino Real
     Palo Alto, CA  94306-2112
4    Telephone: (650) 331-2000
     Facsimile:  (650) 331-2060
5

6    John Nadolenco (CA Bar No. 181128)
     jnadolenco@mayerbrown.com
     Lisa W. Cornehl (State Bar No. 232733)
7    lcornehl@mayerbrown.com
     MAYER BROWN LLP
8    350 South Grand Avenue, 25th Floor
     Los Angeles, CA  90071-1503
9    Telephone:     (213) 229-9500
     Facsimile:      (213) 625-0248
10    Attorneys for Defendant
     AT&T Mobility LLC

11

12

13                 **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

                  **SAN FRANCISCO DIVISION**

15

16    PATRICK HENDRICKS, on behalf of himself    Case No. CV 11-00409-CRB
     and all others similarly situated,
17                                **DEFENDANT AT&T MOBILITY LLC'S**
              Plaintiff,                **REPLY IN SUPPORT OF MOTION TO**
18                                **COMPEL ARBITRATION AND TO**
   vs.                                    **STAY CASE**
19
   AT&T MOBILITY, LLC,
20                               Date:     September 23, 2011
              Defendant.           Time:    10:00 a.m.
21                               Courtroom 8
                              Honorable Charles R. Breyer
22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

ARGUMENT ................................................................................................................................. 1

I.      HENDRICKS'S ATTEMPT TO DISTINGUISH CONCEPCION IS
        MERITLESS........................................................................................................................ 1

        A.      Concepcion Disposes Of Hendricks's Contention That A Class Action Is
                Necessary To Vindicate His Statutory Rights. ...................................................... 2

        B.      Hendricks Can Vindicate His Claims In Individual Arbitration............................. 5

        C.      The FAA Preempts California's Rule That Agreements to Arbitrate
                Statutory Claims Must Require The Drafter To Pay All Arbitration Costs........... 9

II.     THE UNCLEAN-HANDS DOCTRINE DOES NOT APPLY HERE........................... 10

III.    THE FAA PREEMPTS RULES OF CALIFORNIA LAW THAT DECLARE
        CLAIMS FOR INJUNCTIVE RELIEF EXEMPT FROM ARBITRATION ................ 12

CONCLUSION........................................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Alfeche v. Cash Am. Int'l, Inc.*,
5      2011 WL 3565078 (E.D. Pa. Aug. 12, 2011) ............................................................................3

6 *Arellano v. T-Mobile USA, Inc.*,
     2011 WL 1842712 (N.D. Cal. May 16, 2011)...................................................................3, 14
7

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
8      6 P.3d 669 (Cal. 2000) .................................................................................................9, 10

9 *AT&T Mobility LLC v. Bernardi*,
     No. 3:11-cv-03992-CRB (N.D. Cal.)........................................................................................ 1
10

11 *AT&T Mobility LLC v. Concepcion*,
     131 S. Ct. 1740 (2011) ..................................................................................................*passim*
12

*Boyer v. AT&T Mobility Servs., LLC*,
13      2011 WL 3047666 (S.D. Cal. July 25, 2011) ...................................................................... 3, 15

14 *Broughton v. Cigna Healthplans of Cal.*,
     988 P.2d 67 (Cal. 1999) .................................................................................................12, 13
15

16 *Brown v. Ralphs Grocery Co.*,
     128 Cal. Rptr. 3d 854 (Ct. App. 2011) ..............................................................................14, 15
17

*Cappuccitti v. DirecTV, Inc.*,
18      623 F.3d 1118 (11th Cir. 2010) .............................................................................................7

19 *Carney v. Verizon Wireless Telecom, Inc.*,
     2011 WL 3475368 (S.D. Cal. Aug. 9, 2011) ............................................................................3
20

21 *Carrell v. L & S Plumbing P'ship, Ltd.*,
     2011 WL 3300067 (S.D. Tex. Aug. 1, 2011) ...........................................................................3
22

*Clerk v. Cash Am. Net of Nevada, LLC*,
23      2011 WL 3740579 (E.D. Pa. Aug. 25, 2011) ...........................................................................3

24 *Clerk v. Cash Central of Utah, LLC*,
     2011 WL 3739549 (E.D. Pa. Aug. 25, 2011) ...........................................................................3
25

26 *Cruz v. Cingular Wireless LLC*,
     __ F.3d __, 2011 WL 3505016 (11th Cir. Aug. 11, 2011)....................................................... 2, 3
27

*Cruz v. PacifiCare Health Sys., Inc.*,
28      66 P.3d 1157 (Cal. 2003) ....................................................................................................13

ii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*D'Antuono v. Serv. Rd. Corp.*,
  2011 WL 2175932 (D. Conn. May 25, 2011)...........................................................................4

*Davis v. O'Melveny & Myers*,
  485 F.3d 1066 (9th Cir. 2007) ............................................................................................13

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996)...................................................................................................10, 11

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...............................................................................................................7

*Francis v. AT&T Mobility LLC*,
  2009 WL 416063 (E.D. Mich. Feb. 18, 2009) .......................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)................................................................................................................4

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)..................................................................................................3, 4, 5, 8

*Hopkins v. World Acceptance Corp.*,
  __ F. Supp. 2d __, 2011 WL 2837595 (N.D. Ga. June 29, 2011) ...........................................3

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  2011 WL 2886407 (N.D. Cal. July 19, 2011) ....................................................................3, 13

*In re Am. Express Merchants' Litig.*,
  634 F.3d 187 (2d Cir. 2011)..............................................................................................4, 8

*In re Gateway LX6810 Computer Prods. Litig.*,
  2011 WL 3099862 (C.D. Cal. July 21, 2011)....................................................................3, 13

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  370 F. Supp. 2d 1135 (D. Kan. 2005)...................................................................................11

*Litman v. Cellco P'ship*,
  __ F.3d __, 2011 WL 3689015 (3d Cir. Aug. 24, 2011) ........................................................3

*Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Group*,
  128 Cal. Rptr. 3d 330 (Ct. App. 2011) .................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)..............................................................................................................4

*Morse v. ServiceMaster Global Holdings Inc.*,
  2011 WL 3203919 (N.D. Cal. July 27, 2011)........................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Murphy v. DirecTV, Inc.*,
　2011 WL 3319574 (C.D. Cal. Aug. 2, 2011)...........................................................................3

*Nelson v. AT&T Mobility LLC*,
　2011 WL 3651153 (N.D. Cal. Aug. 18, 2011) (Henderson, J.) ...................................... 3, 13, 15

*Perry v. Thomas*,
　482 U.S. 483 (1987)................................................................................................10, 11, 14

*Quevedo v. Macy's, Inc.*,
　__ F. Supp. 2d __, 2011 WL 3135052 (C.D. Cal. June 16, 2011).................................3, 14, 15

*Shearson/Am. Express, Inc. v. McMahon*,
　482 U.S. 220 (1987)...............................................................................................................4

*Southland Corp. v. Keating*,
　465 U.S. 1 (1984)................................................................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
　130 S. Ct. 1758 (2010)......................................................................................................9, 13

*Stutler v. T.K. Constructors Inc.*,
　448 F.3d 343 (6th Cir. 2006) ................................................................................................5

*Swift v. Zynga Game Network, Inc.*,
　2011 WL 3419499 (N.D. Cal. Aug. 4, 2011) ...........................................................................3

*Ting v. AT&T*,
　319 F.3d 1126 (9th Cir. 2003) ............................................................................................15

*Trujillo v. Apple Computer, Inc.*,
　578 F. Supp. 2d 979 (N.D. Ill. 2008) ...................................................................................12

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
　363 U.S. 574 (1960)............................................................................................................13

*Vacco Indus., Inc. v. Van Den Berg*,
　6 Cal. Rptr. 2d 602 (Ct. App. 1992) ....................................................................................10

*Villegas v. US Bancorp*,
　2011 WL 2679610 (N.D. Cal. June 20, 2011).........................................................................3

*Zarandi v. Alliance Data Sys. Corp.*,
　2011 WL 1827228 (C.D. Cal. May 9, 2011) (Fischer, J.) ......................................................13

**STATUTES AND RULES**

Federal Rule of Civil Procedure 11(b).........................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Bus. & Prof. Code § 17203 ...................................................................................15

CAL. CIV. CODE § 1780(e) .............................................................................................9

CAL. CIV. CODE § 1751 ...........................................................................................13, 15

1    Despite the Supreme Court's approval of AT&T Mobility LLC's ("ATTM's") arbitration

2  process in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), Hendricks argues that the

3  pro-consumer features of that process are "pure fantasy." Opp. 1. But he neglects to mention the

4  source of his evidence of the supposedly unfair "reality" of arbitration: the scheme of his counsel

5  (collectively, "the Bursor firm") to extort a lucrative settlement from ATTM by filing numerous

6  arbitrations to enjoin the $39 billion proposed merger between ATTM and T-Mobile—relief that

7  the Bursor firm here concedes cannot be pursued in arbitration. This Court will have an

8  opportunity to consider the propriety of that scheme in the context of a suit ATTM has filed to

9  enjoin those arbitrations from proceeding. *See AT&T Mobility LLC v. Bernardi*, No. 3:11-cv-

10  03992-CRB (N.D. Cal.). But it is self-evident that whether the Bursor firm may pursue duplicative

11  $39 billion arbitrations has little to do with whether Hendricks can obtain individualized relief

12  under ATTM's provision. To be sure, Hendricks asserts that he cannot arbitrate his claims without

13  spending over a million dollars on experts, attorneys' fees, and the like. But that is because his

14  lawyers propose to approach his claim as though it were being litigated as a ***class*** arbitration. As

15  the Supreme Court explained in *Concepcion*, however, a customer's claims are "most unlikely to

16  go unresolved" in ***individual*** arbitration under ATTM's provision. 131 S. Ct. at 1753.

17    Tellingly, Hendricks ignores the many cases rejecting his position that were decided before

18  he filed his opposition; even more have done so thereafter. Since *Concepcion*, the Eleventh Circuit

19  and three federal judges in California have upheld ATTM's arbitration provision. And many other

20  courts, including the Third Circuit, have rejected attempts to distinguish or limit *Concepcion*.

21  Hendricks's attempt to evade *Concepcion* should meet the same fate.

22                                          **ARGUMENT**

23  **I.    HENDRICKS'S ATTEMPT TO DISTINGUISH *CONCEPCION* IS MERITLESS.**

24    Hendricks's principal argument is that arbitration would involve "excessive costs,"

25  including (by his reckoning) over $1.4 million in attorneys' fees, expenses, and arbitration costs.

26  Opp. 1. He asserts that his arbitration agreement therefore is unconscionable under California

27  law and constitutes an impermissible waiver of his "unwaivable statutory rights." *Id.*; *see also*

28  *id.* at 2-9, 13-14. His arguments fail as a matter of law because they already have been rejected

by the Supreme Court in *Concepcion*.  Moreover, as a factual matter he could readily pursue the type of individual relief permissible under ATTM's provision in arbitration.

### A.    *Concepcion* Disposes Of Hendricks's Contention That A Class Action Is Necessary To Vindicate His Statutory Rights.

In *Concepcion*, the Supreme Court rejected the argument that courts may set aside arbitration agreements when "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system."  131 S. Ct. at 1753.  As the Court held, "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons."  *Id.*  The Court added that "aggrieved customers who filed claims would be 'essentially guarantee[d]' to be made whole" under ATTM's arbitration provision and that plaintiffs would be "*better off* under their arbitration agreement with [ATTM] than they would have been as participants in a class action.'"  *Id.* (first alteration in original).

The Eleventh Circuit recently rejected the precise argument that Hendricks makes here: that a challenge to ATTM's arbitration provision based on "evidentiary proof regarding whether parties could vindicate their statutory rights in arbitration * * * escapes *Concepcion*'s preemptive effect."  *Cruz v. Cingular Wireless LLC*, __ F.3d __, 2011 WL 3505016, at *6 (11th Cir. Aug. 11, 2011).  As here, the plaintiffs in *Cruz* submitted attorney affidavits and information about past arbitrations in an effort to show that they could not vindicate their statutory rights under Florida law because "it would not be cost-effective for them to pursue" individually their "legally complex but small-value claims[.]"  *Id.* at *5, *7.  The Eleventh Circuit explained, however, that this "evidence goes only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in *Concepcion*—namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted."  *Id.* at *8.  Citing the same federal statutory-rights cases on which Hendricks relies (*compare id. with* Opp. 2), the Eleventh Circuit held that, "[e]ven if the * * * vindication [of rights] principle applies to state as well as federal statutory causes of action, and even if it could be applied to strike down a class action waiver in the appropriate circumstance, such an argument is foreclosed here, because the *Concepcion* Court examined *this very arbitration agreement* and concluded

1  that it did not produce such a result." *Id.* (emphasis in original; citation and footnote omitted).

2      *Concepcion* and *Cruz* make clear that Hendricks's arbitration agreement is enforceable.

3  Judges Henderson and Whyte of this Court and Judge Houston of the Southern District have also

4  recently upheld the very ATTM arbitration provision that is at issue here.  *Nelson v. AT&T*

5  *Mobility LLC*, 2011 WL 3651153 (N.D. Cal. Aug. 18, 2011) (Henderson, J.); *In re Apple & AT&T*

6  *iPad Unlimited Data Plan Litig.*, 2011 WL 2886407 (N.D. Cal. July 19, 2011) (Whyte, J.); *Boyer*

7  *v. AT&T Mobility Servs., LLC,* 2011 WL 3047666 (S.D. Cal. July 25, 2011) (Houston, J.).  Indeed,

8  many courts have upheld provisions that are less consumer-friendly than ATTM's, despite state

9  law favoring class actions.[1]  As the Third Circuit put it, "*Concepcion* [is] both broad and clear: a

10  state law that seeks to impose class arbitration despite a contractual agreement for individualized

11  arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether

12  class arbitration 'is desirable for unrelated reasons.'"  *Litman v. Cellco P'ship,* __ F.3d __, 2011

13  WL 3689015, at *5 (3d Cir. Aug. 24, 2011) (quoting *Concepcion*, 131 S. Ct. at 1753).

14      Hendricks notes that *Concepcion* did not mention *Green Tree Financial Corp.-Alabama*

15  *v. Randolph*, 531 U.S. 79 (2000).  Opp. 9.[2]  But neither *Green Tree* nor any other Supreme Court

16  [1]    *See, e.g., Clerk v. Cash Am. Net of Nevada, LLC*, 2011 WL 3740579 (E.D. Pa. Aug. 25, 2011); *Clerk v. Cash Central of Utah, LLC*, 2011 WL 3739549 (E.D. Pa. Aug. 25, 2011); *Alfeche*
17  *v. Cash Am. Int'l, Inc.*, 2011 WL 3565078 (E.D. Pa. Aug. 12, 2011); *Carney v. Verizon Wireless Telecom, Inc.*, 2011 WL 3475368 (S.D. Cal. Aug. 9, 2011); *Swift v. Zynga Game Network, Inc.*,
18  2011 WL 3419499 (N.D. Cal. Aug. 4, 2011); *Murphy v. DirecTV, Inc.*, 2011 WL 3319574 (C.D. Cal. Aug. 2, 2011); *Carrell v. L & S Plumbing P'ship, Ltd.*, 2011 WL 3300067 (S.D. Tex. Aug.
19  1, 2011); *Morse v. ServiceMaster Global Holdings Inc.*, 2011 WL 3203919 (N.D. Cal. July 27, 2011); *In re Gateway LX6810 Computer Prods. Litig.*, 2011 WL 3099862 (C.D. Cal. July 21,
20  2011); *Hopkins v. World Acceptance Corp.*, __ F. Supp. 2d __, 2011 WL 2837595 (N.D. Ga. June 29, 2011); *Villegas v. US Bancorp*, 2011 WL 2679610 (N.D. Cal. June 20, 2011); *Quevedo*
21  *v. Macy's, Inc.*, __ F. Supp. 2d __, 2011 WL 3135052 (C.D. Cal. June 16, 2011); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712 (N.D. Cal. May 16, 2011).

22  [2]    Hendricks also contends that the Supreme Court was not presented with his argument
23  about *Green Tree* or any evidence about whether customers could get relief in arbitration.  Opp. 10-11.  To the contrary, the respondents in *Concepcion* and their *amici* argued that California's
24  requirement that class procedures be available for arbitrating small claims was an application of *Green Tree*.  *See* Brief for Resp'ts. at 51, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740
25  (U.S. Sept. 29, 2010) (No. 09-893), *at* 2010 WL 4411292 (California unconscionability law "furthers a key purpose of the FAA—ensuring that arbitration" is not "a prospective waiver of a
26  party's right to pursue statutory remedies") (citing *Green Tree*; internal quotation marks omitted); *see also, e.g.*, Brief of the Am. Antitrust Inst. as *Amicus Curiae* in Supp. of Resp'ts. at
27  2-5, *Concepcion*, *supra*, (Oct. 6, 2010), *at* 2011 WL 397388 (discussing *Green Tree* and other cases cited at Opp. 2).  Moreover, one group of *amici* described what they called "[t]he rich
28  factual record developed in" two other cases (which included attorney affidavits and statistics about arbitrations) that ATTM's arbitration provision "would as a factual matter exculpate

1   case that Hendricks cites (*id.* at 2) so much as hints that an arbitration clause may be invalidated

2   on the ground that it bars class procedures.  In fact, *Gilmer v. Interstate/Johnson Lane Corp.*, 500

3   U.S. 20 (1991), the Court rejected the argument that class procedures are indispensable.  As the

4   Court explained, "even if the arbitration could not go forward as a class action or class relief

5   could not be granted by the arbitrator, the fact that the [Age Discrimination in Employment Act]

6   provides for the possibility of bringing a collective action does not mean that individual attempts

7   at conciliation were intended to be barred."  *Id.* at 32 (internal quotation marks omitted).  The

8   other three cases Hendricks cites do not address the availability of class actions in arbitration.

9   *See Green Tree*, 531 U.S. at 90; *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 238

10  (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985).

11          Hendricks notes that, before *Concepcion*, some lower federal courts had relied on *Green*

12  *Tree* to conclude that a class action was needed to pursue a federal claim.  Opp. 2-3 (citing, *e.g.*,

13  *In re Am. Express Merchants' Litig.*, 634 F.3d 187 (2d Cir. 2011)).  But those cases are no longer

14  good law.  Indeed, one court has voiced "doubt about" their continued survival, explaining that

15  there is "no principled reason why federal law rules that have essentially the same purpose and

16  effect as the *Discover Bank* rule would continue to be permissible after" *Concepcion*.

17  *D'Antuono v. Serv. Rd. Corp.*, 2011 WL 2175932, at *27, *29-*31 (D. Conn. May 25, 2011).[3]

18  To the extent that these decisions would allow a court to insist upon class procedures in

19  arbitration, they have been overruled by *Concepcion*.  Indeed, on August 1, 2011, the Second

20  Circuit stated that it was "sua sponte considering rehearing" of its decision in *In re American*

21  *Express* "[i]n light of" *Concepcion*.  Decl. of Kevin Ranlett Ex. 1 at 17.[4]

22

23  AT&T from liability."  Br. of *Amici Curiae* Marygrace Coneff *et al.* at 2, 7-24, *Concepcion*,
    *supra* (Oct. 6, 2010), *at* 2010 WL 3973886.

24  [3]     The *D'Antuono* court nonetheless believed that it was "obligated to apply" existing
    Second Circuit precedent, but held that the arbitration clauses at issue—which lack the incentives

25  that are the hallmark of ATTM's clause—were enforceable under that precedent because they
    permitted the claimants to vindicate their statutory rights without a class action.  *Id*. at *29-31.

26  [4]     Moreover, even if these decisions remain good law, they do not apply to Hendricks's

27  state-law claims.  *Green Tree* and the other cases outlining the vindication-of-rights rationale
    "are limited by their plain language to the question of whether an arbitration clause is
    enforceable where *federal statutorily provided* rights are affected"; by contrast, when a plaintiff,

28  "seek[s] to enforce * * * rights provided by state law," those cases "simply do not apply."
    (cont'd)

**B.      Hendricks Can Vindicate His Claims In Individual Arbitration.**

Even if—contrary to the massive weight of authority—*Concepcion* were not dispositive, Hendricks is mistaken that he cannot feasibly arbitrate his claims on an individual basis. Hendricks insists that he would be required to pay over $150,000 to the American Arbitration Association ("AAA") in fees and arbitrator compensation, plus over $1.2 million to his attorneys and experts.  Opp. 7-9.  But he has failed to meet his "burden of showing the likelihood of incurring such costs."  *Green Tree*, 531 U.S. at 92.  As the Supreme Court has explained, the mere "'risk' that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."  *Id.* at 91.

**1.**  Hendricks asserts that he would have to pay $4,600 in AAA filing and administrative fees and $151,725 to the arbitrators under the AAA's fee schedule for non-monetary claims. Opp. 8-9.  Hendricks's estimate of his share of these costs is wildly wrong for three reasons.

*First*, regardless of the amount of the fees, Hendricks is mistaken in assuming that he must pay them.  Under ATTM's agreement, "[ATTM] will pay all AAA filing, administration and arbitrator fees for any arbitration" properly initiated under the agreement, unless either the "claim is for greater than $75,000" or the arbitrator holds that the claim is frivolous (under the standards of Federal Rule of Civil Procedure 11(b)).  Decl. of Romi Manchanda Ex. 1 at 16-17.

Despite this commitment, Hendricks asserts that ATTM would refuse to pay his share of the costs.  Hendricks first says that ATTM would argue that the amount in dispute exceeds the $75,000 threshold for cost-free arbitration.  Opp. 6-7.  But the stakes would be far below that if Hendricks were to initiate an ***individual*** arbitration.  He alleges an overcharge of $15 per month (*id.* at 1), so the amount in dispute would surpass $75,000 only if he initiates a class arbitration or seeks an injunction that goes beyond providing him individualized relief.  But both of those types of claims for relief are barred by his arbitration agreement, as he concedes.  *Id.* at 14, 17.

Next, pointing to a series of arbitrations in which ATTM has declined to cover the costs,

---

*Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006) (emphasis added).  The reason is simple:  Whereas "*Congress* [may] evince[] an intention to preclude a waiver of judicial remedies for the statutory rights at issue" (*Green Tree*, 531 U.S. at 90 (emphasis added)), the Supremacy Clause of the U.S. Constitution prevents states from doing the same.

1    Hendricks says that ATTM "routinely" avoids paying arbitration costs by accusing the customer

2    of breaching the arbitration agreement.  *Id.* at 6.  But he fails to explain the unique circumstances

3    of those cases, which, like this one, were brought by the Bursor firm.  In an effort to undermine

4    *Concepcion*, that firm launched a website to recruit ATTM customers to bring "thousands" of

5    copycat arbitrations seeking not individual relief, but rather an across-the-board injunction

6    against the proposed $39 billion merger between AT&T Inc. and T-Mobile USA, Inc.  Ranlett

7    Decl. Ex. 2.  According to one press report, the stated goal of the Bursor firm is to coerce

8    "AT&T to settle, given the 'daunting' prospect of fighting more than 750 arbitrations, any one of

9    which could stop the deal."  *Id.* Ex. 4.  As Scott Bursor, the firm's named partner, proclaimed to

10   a reporter, "[i]f we bring 100 cases and lose 99 of them we are going to win."  *Id.* Ex. 5.  The

11   Bursor firm has filed 977 such demands for arbitration with the AAA, and the arbitrator-

12   selection process is underway in 24 cases.  *Id.* ¶¶ 8-20.  These arbitrations seek only relief that is

13   barred by the arbitration agreement, and the amount at stake—a $39 billion merger—exceeds the

14   $75,000 threshold for cost-free arbitration.  Accordingly, ATTM declined to pay the Bursor

15   firm's costs.  Decl. of Scott Bursor Ex. 9.  But in doing so, ATTM made clear that "[i]f any of

16   the [c]laimants chooses to withdraw his or her entirely improper Demand [for Arbitration] and

17   re-file one * * * that complies with the arbitration agreement * * * and has a value of $75,000 or

18   less, AT&T will promptly reimburse that claimant for the filing fee for the subsequent Demand

19   or pay it directly, if the claimant cannot do so himself or herself."  *Id.* at 4.

20        The fact that ATTM has legitimately refused to pay arbitration costs when it is not

21   obligated to do so does not mean that "the terms providing for 'cost-free arbitration'" in

22   Hendricks's arbitration agreement are "illusory."  Opp. 6.  Indeed, since ATTM began providing

23   cost-free arbitration to its customers in 2003, it has never refused to pay AAA arbitration fees

24   and costs—other than in this one instance.  Decl. of Jan Mendel. ¶¶ 3-4.  If this Court were to

25   order Hendricks to arbitrate his individual claims in accordance with his arbitration agreement,

26   ATTM would pay the full costs of that arbitration.

27        ***Second***, Hendricks's estimate of the fees is based on the wrong AAA fee schedule—the

28   one for non-monetary claims.  In an individual arbitration, where a broad injunction affecting

6

ATTM's billing or metering practices would be off the table, Hendricks could simply seek damages for any alleged overcharges.[5]  And under the applicable fee schedule, the AAA caps the consumer's share of costs and arbitrator's fees at $125.  Ranlett Decl. Ex. 37 § C-8.  To allow Hendricks to avoid arbitration because he insists upon pursuing an unnecessary injunction in order to inflate the cost of arbitration to prohibitive levels would be perverse.  As the Eleventh Circuit explained in rejecting a similar ploy—in which the plaintiff omitted a claim for attorneys' fees and then argued that arbitration would be too expensive—a court should consider all the ways a claim could be presented in arbitration, not merely the one that the plaintiff's "attorneys created" for tactical reasons.  *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1126 (11th Cir. 2010).

***Third***, Hendricks's estimate of the arbitrator's compensation rests on two faulty assumptions.  He first assumes that the arbitrator would charge as much as one did in a three-year class arbitration his counsel handled against Verizon.  Opp. 8; Bursor Decl. ¶ 39.  But ***individual*** arbitration of Hendricks's claims would be simpler and swifter than that ***class*** arbitration by orders of magnitude.  As the Supreme Court recognized in *Concepcion*, "[t]he AAA's rules governing class arbitrations mimic the Federal Rules of Civil Procedure for class litigation."  131 S. Ct. at 1751.  Unsurprisingly, the class arbitration Hendricks uses as an exemplar took three years, and the arbitrator billed for hundreds of hours of time.  Bursor Decl. ¶¶ 39-40.  By contrast, if Hendricks's claims were pursued in individual arbitration, the AAA's rules would require that the hearing be held within 30 days of the arbitrator's appointment and generally be limited to a single day.  Ranlett Decl. Ex. 37 § C-5 & Ex. 36 §§ E-7, E-8.  The arbitrator would then be required to issue a final award within two weeks.  *Id.* Ex. 36 § E-9.  It is difficult to imagine that the arbitrator's bill would be even remotely comparable to the amount a class arbitration would cost.  *Cf. Concepcion*, 131 S. Ct. at 1751 (even "[a] cursory comparison of bilateral and class arbitration illustrates the difference").

Hendricks also presumes that the AAA would appoint a three-arbitrator panel.  Opp. 8-9.

---

[5]  In fact, Hendricks could not get an injunction.  "According to well-established principles of equity, a plaintiff seeking a permanent injunction * * * must demonstrate," among other things, "that remedies available at law, such as monetary damages, are inadequate to compensate for" an "irreparable injury."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

1  The AAA's consumer rules, however, call for the appointment of a single arbitrator.  Ranlett

2  Decl. Ex. 37 § C-4.  Although the AAA has discretion to appoint a three-arbitrator panel—and

3  doing so might make sense in the context of an arbitration seeking broad, class-like remedies—

4  Hendricks's supposition that the AAA would employ three arbitrators to resolve a claim for

5  individualized relief of the sort that he is entitled to pursue is nothing more than speculation (and

6  fanciful speculation at that).  *See Green Tree*, 531 U.S. at 91.

7      **2.**  Hendricks also asserts that arbitrating his claim would cost him $174,179.11 in expert

8  and attorney expenses, plus $1.1 million in attorneys' fees.  Opp. 8-9.  He chiefly relies on *In re*

9  *American Express*, in which the Second Circuit found that the plaintiffs could not pursue their

10  antitrust claims in arbitration on an individual basis because of the large, non-recoverable cost of

11  experts and the uncertainty of recovering attorneys' fees.  *See* 634 F.3d at 198-99.

12      Here, however, Hendricks would face no similar barrier to relief.  To begin with, because

13  ATTM's arbitration agreement gives ATTM a powerful incentive to settle claims without the

14  need for arbitration, a customer's claims are "most unlikely to go unresolved."  *Concepcion*, 131

15  S. Ct. at 1753.  And even if were to become necessary for Hendricks to pursue arbitration, he

16  could feasibly do so.  Hendricks mistakenly assumes that, to pursue ***individual arbitration***, he

17  would need to engage in the same scorched-earth litigation required in ***class*** proceedings.  For

18  example, he submits a declaration from an expert whom his counsel routinely retains, Colin

19  Weir, who estimates the costs—based on a prior class arbitration (Decl. of Colin Weir ¶¶ 55-

20  57)—of providing a comprehensive report in advance of trial (*id.* ¶ 54(3)); participating in

21  depositions and other discovery (*id.* ¶ 54(2), (4)); preparing a rebuttal report to the expert reports

22  that would be "proffered by defendant" (*id.* ¶ 54(5)); and participating in "arbitration hearings"

23  (*id.* ¶ 54(6)).  And Hendricks's counsel estimates that his own fees and expenses will be the same

24  as they were in a past class arbitration.  Bursor Decl. ¶¶ 52-54.  But as we have explained,

25  Hendricks is comparing apples to oranges (or, more aptly, watermelons to raisins).  Hendricks's

26  expert and counsel would have to do a lot of work to support an attempt to certify a class, and

27  would meet heavy resistance from ATTM, which (like most defendants) would defend

28  vigorously against class proceedings.  But that is not how individual arbitration would proceed.

Rather, as the Supreme Court has recognized, individual arbitration is, by its very nature, a more informal and efficient process than class-wide litigation: "In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution," including "lower costs [and] greater efficiency and speed[.]" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010). In consumer arbitrations involving modest individual claims, there are typically no pretrial motions, battles of the experts, or other expensive procedures that take place in litigation. Instead, arbitration on an individual basis is a simple and accessible means of dispute resolution for consumers. *See Francis v. AT&T Mobility LLC*, 2009 WL 416063, at *7-*8 (E.D. Mich. Feb. 18, 2009) (rejecting argument that it would cost "millions of dollars in discovery and expert costs" to arbitrate claim that customer had been improperly charged for domestic calls at an international rate).

Moreover, Hendricks erroneously assumes that attorneys' fees and the costs of retaining experts would be non-recoverable. The arbitrator can award him statutory attorneys' fees and costs under the CLRA. CAL. CIV. CODE § 1780(e). Hendricks also can recover his expert's fees and expenses. Hendricks's counsel observes that a AAA rule provides that parties must pay for their own witnesses. Bursor Decl. ¶ 51. But ATTM's arbitration agreement specifies that the AAA rules apply "as modified by this Agreement." Manchanda Decl. Ex. 1 at 16. Under the agreement, if the arbitrator were to award Hendricks more than ATTM's settlement offer, Hendricks would be entitled to a minimum recovery of $10,000, and ATTM would be obliged to "pay [his] attorney * * * twice the amount of attorneys' fees, and reimburse any expenses (*including expert witness fees and costs*), that [his] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration." *Id.* at 17 (emphasis added).

### C. The FAA Preempts California's Rule That Agreements to Arbitrate Statutory Claims Must Require The Drafter To Pay All Arbitration Costs.

Hendricks alternatively contends that he need not arbitrate because California law bars enforcement of arbitration agreements that require consumers pursuing CLRA or UCL claims to pay costs that would not be incurred in court. Opp. 4-6 (citing, *e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000)). But as noted above, Hendricks has failed

1  to show that he would be required to pay any arbitration costs.  *See* pages 5-6, *supra*.

2          Moreover, *Concepcion* makes clear that *Armendariz* is preempted by the FAA.   In

3  *Armendariz*, the California Supreme Court stated that when the California Legislature has

4  deemed a statutory claim to be "unwaivable," agreements to arbitrate those claims "must be

5  subject to particular scrutiny" and thus are invalid unless they satisfy five "minimum

6  requirements."  6 P.3d at 680, 682.  One requirement is that the claimant cannot be required to

7  "bear any *type* of expense that [he or she] would not be required to bear if he or she were free to

8  bring the action in court."  *Id.* at 687.  In *Concepcion*, however, the Supreme Court made clear

9  that, under the FAA, "courts must place arbitration agreements on an equal footing with other

10  contracts" and may not invalidate them on the basis of "defenses that apply only to arbitration or

11  that derive their meaning from the fact that an agreement to arbitrate is at issue."  131 S. Ct. at

12  1745-46; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v.*

13  *Thomas*, 482 U.S. 483, 492 n.9 (1987).  Because *Armendariz*'s requirements apply only to

14  arbitration agreements, they are preempted.

15  **II.      THE UNCLEAN-HANDS DOCTRINE DOES NOT APPLY HERE.**

16          Hendricks argues that ATTM should be barred from enforcing his arbitration agreement

17  under the doctrine of unclean hands.  This Court can easily dispense with this argument because

18  "[t]he misconduct which brings the unclean hands doctrine into operation must relate directly to

19  the transaction" at issue and "affect the equitable relations between the litigants" (*Vacco Indus.,*

20  *Inc. v. Van Den Berg*, 6 Cal. Rptr. 2d 602, 612 (Ct. App. 1992) (internal quotation marks

21  omitted)), and Hendricks does not and cannot allege that ATTM acted inequitably ***vis-à-vis him***.

22  In any event, each of Hendricks's allegations of "inequitable conduct" is specious.

23          Hendricks first contends that ATTM misrepresents the cost of arbitration by referring to a

24  $125 filing fee without disclosing that the AAA requires a greater fee in cases involving non-

25  monetary relief.  Opp. 15.  In fact, the agreement states that "[t]he filing fee currently is $125 for

26  claims under $10,000 but is subject to change by the arbitration provider" and then explains that

27  the AAA rules (which set the fees) "are available online at www.adr.org, by calling the AAA at

28  1-800-778-7879, or by writing to [ATTM]."  Manchanda Decl. Ex. 1 at 16.  The fact that ATTM

1   identifies the fee most likely to apply to a dispute and then refers customers to the AAA rules for

2   the rest of the fee schedule is not deceptive, much less so "inequitable" that ATTM's arbitration

3   agreements should be invalidated.[6]   Moreover, in the vast majority of cases in which an ATTM

4   customer seeks *individual* non-monetary relief—including this one—the stakes would be less

5   than $75,000.  In that circumstance, ATTM is required to "pay [the filing fee] directly upon

6   receiving a written request" (*id.*), making Hendricks's complaint an entirely theoretical one.

7        Hendricks next asserts that, "although the agreement represents that 'AT&T will pay all

8   filing, administration, and arbitrator fees for any arbitration,' in practice AT&T refuses to pay or

9   reimburse such fees."  Opp. 15 (citation omitted).  As noted above, Hendricks is referring to

10  ATTM's refusal to bankroll the effort by the Bursor firm to extort ATTM into a settlement by

11  bringing numerous duplicative and *ultra vires* arbitrations challenging a $39 billion merger.  *See*

12  page 6, *supra*.  Because ATTM was acting within its rights, its "hands" are not "unclean."[7]

13       Finally, Hendricks alleges that ATTM "pressur[es] and intimidat[es] AAA administrators

14  to violate AAA rules and to delay or impede administration of customers' arbitration demands."

15  Opp. 16.  His supposed examples of such misconduct are exceptionally misleading, however.

16       First, Hendricks quotes a case in which a court stated that "AT&T used  [its] economic

17  power to successfully persuade the AAA to prematurely bend its own rules."  *In re Universal*

18  *Serv. Fund Tel. Billing Practices Litig.*, 370 F. Supp. 2d 1135, 1141 (D. Kan. 2005).  As we have

19  previously explained to Hendricks's counsel (Bursor Decl. Ex. 5 at 7 n.6), however, that case

20  involved AT&T Corporation, a wireline provider that, at the time, had no relationship whatever

21  with ATTM (then called Cingular Wireless LLC).  Decl. of Carolyn Wilder ¶¶ 3-5.

---

22  [6]     For the same reason, Hendricks's contention that his arbitration agreement is
    procedurally unconscionable because it "does not mention" the fee for injunctions (Opp. 13)
23  fails.  And even if his agreement were procedurally unconscionable, California requires both
    procedural and substantive unconscionability to invalidate a contract.  *See Mission Viejo*
24  *Emergency Med. Assocs. v. Beta Healthcare Group*, 128 Cal. Rptr. 3d 330, 340 (Ct. App. 2011)
    (reversing denial of motion to compel arbitration because "even if the provision is procedurally
25  unconscionable, it fails the substantive unconscionability test").  Hendricks cannot demonstrate
    substantive unconscionability.

26  [7]     In any event, it would violate the FAA to invalidate Hendricks's arbitration agreement
    merely because ATTM refused to fund a group of unrelated arbitrations brought by other
27  customers.  Because California law does not apply such a sweeping rule to contracts generally,
    the FAA forbids applying such a rule to arbitration agreements.  *See Casarotto*, 517 U.S. at 687;
28  *Perry*, 482 U.S. at 492 n.7.

1       Second, Hendricks states that a court found that an ATTM in-house lawyer committed

2   "perjury" in connection with a motion to compel arbitration in another case.  Opp. 16 (citing

3   *Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979 (N.D. Ill. 2008)).  That is a slander—and

4   Hendricks's counsel know that, because this isn't the first time they have trotted it out and this

5   isn't the first time we have had to correct it.  Bursor Decl. Ex. 8 at 6 n.4.  In *Trujillo*, the court

6   identified errors in the lawyer's description of how a customer had contracted for service, which

7   ATTM brought to the court's attention as soon as the lawyer became aware of them.  578 F.

8   Supp. 2d at 985-86.  The lawyer acknowledged his errors, but that is what they were: errors.  The

9   court did not find that anyone had committed perjury.  To the contrary, the court stated during a

10   hearing: "I'm certainly not in a position to say, nor did I suggest, or at least I wasn't intending to

11   suggest, that anybody had engaged in some sort of a * * * deliberate effort to conceal something

12   or hide something or misrepresent something."  Ranlett Decl. Ex. 38, at 12:3-7.

13       Third, Hendricks complains that an ATTM in-house lawyer recently "has written four

14   letters to AAA administrative personnel urging [the] AAA to refuse administration of customers'

15   demands for arbitration."  Opp. 16.  Hendricks is referring to letters sent in connection with the

16   numerous arbitrations that the Bursor firm has filed to challenge the AT&T/T-Mobile merger.

17   Although Hendricks insinuates that those letters were *ex parte* communications, in fact ATTM

18   copied the Bursor firm on those letters, which constituted ATTM's submission on the

19   applicability of the AAA's Class Arbitration Policy to those arbitrations.  *See* Bursor Decl. Exs.

20   1, 5, 8, 9; *see also* Ranlett Decl. Exs 22-27.  Under that Policy, the AAA "is not currently

21   accepting for administration demands for class arbitration where the underlying agreement

22   prohibits class claims, * * * unless an order of a court" authorizes the proceeding.  Ranlett Decl.

23   Ex. 21.  That Policy is applied by the AAA itself—as arbitrators are never appointed if a case is

24   declined—and so the parties must submit their views directly to the AAA if they wish them

25   considered.  Unsurprisingly, the Bursor firm also wrote to the AAA about the same subject.

## III.    THE FAA PREEMPTS RULES OF CALIFORNIA LAW THAT DECLARE CLAIMS FOR INJUNCTIVE RELIEF EXEMPT FROM ARBITRATION

Relying on *Broughton v. Cigna Healthplans of California*, 988 P.2d 67 (Cal. 1999), *Cruz*

1  *v. PacifiCare Health Systems, Inc.*, 66 P.3d 1157 (Cal. 2003), and California Civil Code § 1751,

2  Hendricks asserts that California law forbids arbitration of claims for injunctive relief under the

3  CLRA and UCL.  Opp. 16-17.  And he contends that "the restrictions [in ATTM's arbitration

4  agreement] on the arbitrator's ability to grant injunctive relief" that would affect third parties are

5  unconscionable under California law.  *Id.* at 13-14.[8]

6          Hendricks concedes that his agreement permits him to obtain an injunction that would

7  benefit him ***individually***; his complaint is that it bars him from seeking an injunction "with

8  respect to anyone other than [himself] alone."  Opp. 17.  But to the extent that California law

9  forbids enforcing arbitration agreements when the plaintiff seeks a so-called "public injunction"

10  under the CLRA or UCL, it is preempted by the FAA.[9]  As the Supreme Court explained in

11  *Concepcion*, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the

12  analysis is straightforward:  The conflicting rule is displaced by the FAA."  131 S. Ct. at 1747.

13  Because *Broughton* and *Cruz* (as well as the California unconscionability rule that Hendricks

14  hypothesizes) express a "state law" rule that "prohibits outright" the arbitration of certain claims,

15  the FAA preempts those decisions.  In recent months, five federal judges—including three of this

16  Court—have squarely held that the FAA preempts *Cruz* and *Broughton*.  *See Nelson*, 2011 WL

17  3651153, at *2, *4 (Henderson, J.); *In re Gateway LX6810 Computer Prods. Litig*, 2011 WL

18  3099862, at *3 (C.D. Cal. July 21, 2011) (Tucker, J.); *iPad*, 2011 WL 2886407, at *4 (Whyte,

19  J.); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712, at *1-*2 (N.D. Cal. May 16, 2011)

20  (Alsup, J.); *Zarandi v. Alliance Data Sys. Corp.*, 2011 WL 1827228, at *2 (C.D. Cal. May 9,

---

[8]      There is good reason for an arbitration agreement to restrict injunctive relief to the claimant participating in the arbitration.  As the Supreme Court has explained, an arbitrator "has no general charter to administer justice for a community which transcends the parties," but rather is "part of a system of self-government created by and confined to the parties."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960) (internal quotation marks omitted).  In other words, "arbitration is a matter of consent."  *Stolt-Nielsen*, 130 S. Ct. at 1775.  None of the many absent parties whose rights would be affected by a broad injunction has agreed to allow Hendricks to represent their interests in arbitration.

[9]      In a case pre-dating *Concepcion*, the Ninth Circuit observed that in *Broughton* and *Cruz* the California Supreme Court rejected the contention that the FAA precluded it from declaring claims for public injunctions non-arbitrable.  *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1080 (9th Cir. 2007).  However, in neither *Davis* nor any other case has the Ninth Circuit itself affirmatively embraced that view.  In any event, *Concepcion* is an intervening authority that compels addressing the preemption issue anew.

1    2011) (Fischer, J.).[10]

2          Hendricks fails to disclose the decisions issued before his opposition was filed, and

3    instead cites dicta in a recent California state-court decision assuming that *Broughton* and *Cruz*

4    remain good law because the Supreme Court did not mention "representative private attorney

5    general actions to enforce" state laws.  *Brown v. Ralphs Grocery Co.*, 128 Cal. Rptr. 3d 854,

6    860-61 (Ct. App. 2011) (cited at Opp. 18 n.3).  But that court overlooked *Concepcion*'s holding

7    that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable

8    for unrelated reasons."  131 S. Ct. at 1753.  If, as the Supreme Court declared in *Concepcion*,

9    California cannot require that parties to arbitration agreements agree to class procedures in order

10   to maximize enforcement of state consumer-protection laws, it follows that California cannot

11   preclude such parties from agreeing to limit the injunctive relief available in arbitrable disputes

12   to that necessary for vindication of the individual's own claims.

13         As one federal court recently explained, the argument that states may create a

14   representative claim and then bar individuals from waiving that claim by agreeing to arbitrate

15   disputes only on an individual basis "is no longer tenable in light of the Supreme Court's recent

16   decision in * * * *Concepcion*."  *Quevedo v. Macy's, Inc.*, __ F. Supp. 2d __, 2011 WL 3135052,

17   at *17 (C.D. Cal. June 16, 2011).  *Quevedo* concerned a plaintiff's attempt to avoid arbitration of

18   a claim under California's Private Attorney General Act ("PAGA").  *Id*. at *3.  The plaintiff

19   argued that, because PAGA permits him to obtain relief for other employees, "sending the

20   PAGA claim to arbitration would irreparably frustrate the purpose of PAGA and prevent [him]

21   from fulfilling the [California] Legislature's mandate."  *Id*. at *15 (internal quotation marks

22   omitted).  The court disagreed, concluding that "requiring arbitration agreements to allow for

23   representative PAGA claims on behalf of other employees would be inconsistent with the FAA."

24   *Id.* at *17.  Analogizing to *Concepcion*, the court explained:

---

25   [10]    Even before *Concepcion*, the Supreme Court had held that the FAA bars California from
       creating causes of action and then requiring them to be brought in court.  *See Perry*, 482 U.S. at
26   492 (California law barring arbitration of certain employment claims); *Southland Corp. v.
       Keating*, 465 U.S. 1, 16 (1984) (California law barring arbitration of certain franchise disputes).
27   As the Supreme Court has explained, Section 2 of the FAA "declare[s] a national policy favoring
       arbitration and withdrew the power of the states to require a judicial forum for the resolution of
28   claims which the contracting parties agreed to resolve by arbitration."  *Southland*, 465 U.S. at 10.

1   A claim brought on behalf of others would, like class claims, make for a slower,
2   more costly process.  In addition, representative PAGA claims "increase[ ] risks
    to defendants" by aggregating the claims of many employees.  * * *  Defendants
3   would run the risk that an erroneous decision on a PAGA claim on behalf of many
    employees would "go uncorrected" given the "absence of multilayered review."
4   * * *  Just as "[a]rbitration is poorly suited to the higher stakes of class litigation,"
    it is also poorly suited to the higher stakes of a collective PAGA action.

5   *Id.* at *17 (quoting *Concepcion*, 131 S. Ct. at 1752) (alterations in *Quevedo*).

6      Hendricks's claims for public injunctive relief under the UCL and CLRA exhibit the

7   same incompatibilities with arbitration, as Judge Henderson recently stated in explaining why the

8   analysis in *Quevedo* is correct and the California Court of Appeal's decision in *Brown* is

9   misguided.  *Nelson*, 2011 WL 3651153, at *4.  Resolving the propriety of a public injunction

10  affecting tens of millions of AT&T customers would be a "slow[]" and "costly process," with

11  "'high[] stakes,'" and the risk that an erroneous company-wide injunction would "'go

12  uncorrected.'"  *Quevedo*, 2011 WL 3135052, at *17 (quoting *Concepcion*, 131 S. Ct. at 1752).

13  Such claims are just as inconsistent with arbitration as the class-action procedures addressed in

14  *Concepcion*.  Indeed, a plaintiff may bring a claim for public injunctive relief under the UCL

15  only in the context of a certified class action (CAL. BUS. & PROF. CODE § 17203)—which is

16  precisely what *Concepcion* forbids California from requiring.

17     Finally, Hendricks argues that the arbitrator's inability to award public injunctive relief is

18  invalid under the CLRA's anti-waiver provision.  Opp. 18 (citing CAL. CIV. CODE § 1751).  But

19  he fails to mention that the Ninth Circuit has held that the FAA preempts that statute because it

20  "is not a law of 'general applicability'" that may be used to invalidate an arbitration agreement.

21  *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *see also Boyer*, 2011 WL 3047666, at *3.

22                                **CONCLUSION**

23     The Court should issue an order (i) compelling Hendricks to arbitrate his claims on an

24  individual basis and (ii) staying this action.

25  Dated:  September 9, 2011                  MAYER BROWN LLP

26                                             By: /s/ John Nadolenco

27                                             John Nadolenco (CA Bar No. 181128)
                                               jnadolenco@mayerbrown.com
28                                             MAYER BROWN LLP

                                      15

| | |
|---|---|
| 1 | 350 South Grand Avenue, 25th Floor |
| | Los Angeles, CA  90071-1503 |
| 2 | Telephone:      (213) 229-9500 |
| | Facsimile:      (213) 625-0248 |
| 3 | |
| | Donald M. Falk (CA Bar No. 150256) |
| 4 | dfalk@mayerbrown.com |
| | MAYER BROWN LLP |
| 5 | Two Palo Alto Square, Suite 300 |
| | 3000 El Camino Real |
| 6 | Palo Alto, CA  94306-2112 |
| | Telephone: (650) 331-2000 |
| 7 | Facsimile:  (650) 331-2060 |
| 8 | Attorneys for Defendant |
| | AT&T Mobility LLC |
| 9 | |
| 10 | *Of counsel:* |
| | Andrew J. Pincus |
| 11 |    (application for *pro hac vice* admission pending) |
| | Evan M. Tager |
| 12 | Archis A. Parasharami |
| |    (application for *pro hac vice* admission pending) |
| 13 | Kevin S. Ranlett |
| |    (application for *pro hac vice* admission pending) |
| 14 | Theodore J. Weiman |
| 15 | MAYER BROWN LLP |
| | 1999 K Street, N.W. |
| 16 | Washington, DC 20006 |
| | Tel: (202) 263-3000 |
| 17 | Fax: (202) 263-3300 |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

16