IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC.,<br><br>    Defendant._____/ | No. C 11-00409 CRB<br><br>**ORDER COMPELLING ARBITRATION AND STAYING CASE** |

This is a purported class action against AT&T Mobility ("Defendant" or "AT&T") relating to its billing practices. See generally Compl. (dkt. 34). Defendant has moved to compel arbitration and stay the case during arbitration, arguing that, in light of AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011), Plaintiff cannot avoid arbitration. See Mot. (dkt. 35). The Court agrees.

**I.    BACKGROUND**

Plaintiff Patrick Hendricks is an AT&T iPhone subscriber whose terms of service are governed by a contract with AT&T. Compl. ¶¶ 10, 49. That contract "requires the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions, and also limits the remedies available . . . in the event of a dispute." Manchanda Decl. (dkt. 35-6) Ex. 1 at 1. It governs "all disputes and claims between [AT&T and the consumer]," and states, among other things, that:

> The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

Id. at 15, 18.

Notwithstanding that contract language, Plaintiff purports to bring a class action, alleging that "AT&T's billing system for iPhone and iPad data transactions is like a rigged gas pump that charges for a full gallon when it pumps only nine-tenths of a gallon into your car's tank." Compl. ¶ 1. He initially brought suit in January 2011, see dkt. 1, but then stayed the case in March 2011 while awaiting the Supreme Court's decision in Concepcion, 131 S. Ct. 1740, see dkt. 29. Following Concepcion, Plaintiff filed an amended complaint in June 2011. See generally Compl. The Complaint now includes the following causes of action: (1) declaratory relief finding that AT&T's dispute resolution terms are unjust and unreasonable under 47 U.S.C. § 201(b); (2) common count for money had and received; (3) breach of contract; (4) unjust enrichment; (5) violation of 47 U.S.C. § 201(b); and (6) violation of Californian's Unfair Competition Law § 17200.

Defendant AT&T Mobility has filed a motion to compel arbitration. See generally Mot.

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress's purpose in passing the Act was to put arbitration agreements "upon the same footing as other contracts," thereby "reversing centuries of judicial hostility to arbitration agreements" and allowing the parties to avoid "the costliness and delays of litigation." Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

In applying the Act, courts have developed a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1,

24-25 (1983). The Supreme Court has emphasized that courts should refer a matter for arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. at 584-85. Thus, any doubt about the applicability of an arbitration clause must be "resolved in favor of arbitration." Id. at 589 (Whittaker, J., dissenting).

At the same time, however, the Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech. Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers, 363 U.S. at 582). Thus, a court's task in reviewing the arbitrability of a particular dispute is to determine whether the parties have agreed to submit that dispute to arbitration. "The standard for demonstrating arbitrability is not high." Simula, Inc. v. Autoliv, Inc., 175 F.3d 717, 719 (9th Cir. 1999). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985) (citing §§ 3 and 4 of the FAA) (emphasis in original).

The final phrase of § 2 of the FAA provides that arbitration agreements are to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, in addition to determining the arbitrability of a dispute, courts should determine the enforceability of the arbitration agreement. Grounds for declaring an arbitration agreement unenforceable are determined by "ordinary state-law principles that govern the formation of contracts." Circuit City, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue

3

are unsuitable for arbitration." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000).

## III. DISCUSSION

Plaintiff advances four arguments against compelling arbitration in this case, but does not meet his burden of proving that the claims at issue are unsuitable for arbitration. See Green Tree, 531 U.S. at 81. This Order discusses each of Plaintiff's arguments in turn.

### A. Excessive Costs

Plaintiff's primary argument for why the agreement is unenforceable is that it would impose excessive costs that would prevent him from vindicating his rights. See Opp'n (dkt. 37) at 2-11. He asserts that, despite AT&T's claim that it provides a "cost-free" arbitration, there are "two giant loopholes that AT&T routinely exploits to avoid paying arbitration filing fees." Id. at 6. These are, first, "that AT&T can avoid paying arbitration fees by alleging that the customer has breached the agreement," and, second, "that whenever a customer seeks injunctive relief that might have a 'monetary impact' on AT&T (or other parties) that exceeds $75,000, AT&T asserts the payment of costs is governed by AAA default rules." Id. at 6-7. He claims that because of these two loopholes, he would be required to advance arbitral fees of "at least $4,600 . . . and would also be responsible for half of the arbitrator's compensation." Id. at 7. He further contends that "individual arbitration of the claims in this action would cost [him] approximately $290,504.11 in AAA fees, arbitrator compensation, and expert fees," thus making it "economically irrational for [him] to advance any of these costs to dispute a $15 charge." Id. at 7-9.

In support of this argument, Plaintiff relies on Armendariz, 24 Cal. 4th at 110-11, which held that when an employer imposes mandatory arbitration of employee claims under FEHA, "the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." See id. at 7. He asserts that he "would not have to bear any of these fees in federal court." Id. Plaintiff also relies on Green Tree, 531

4

1 U.S. at 90, in which the Supreme Court noted that "[i]t may well be that the existence of
2 large arbitration costs could preclude a litigant . . . from effectively vindicating her federal
3 statutory rights[1] in the arbitral forum." See Opp'n at 2-4. Importantly, the Court in Green
4 Tree also held that "the 'risk' that [a litigant] will be saddled with prohibitive costs is too
5 speculative to justify the invalidation of an arbitration agreement." Id. at 91.[2]

6 As to the first "loophole" Plaintiff identifies, although he asserts that Defendant
7 "routinely" refuses to pay arbitration costs by accusing the customer of breach, see Opp'n at
8 6, Defendant responds that it only alleged breach as to the set of arbitrations recently filed by
9 the Bursor firm seeking "only relief that is barred by the arbitration agreement, and the
10 amount at stake – a $39 billion merger – [that] exceeds the $75,000 threshold for cost-free
11 arbitration." Reply (dkt. 42) at 6 (citing Bursor Decl. Ex. 9, an 8/2/11 letter to AAA).
12 Defendant represents that "since [Defendant] began providing cost-free arbitration to its
13 customers in 2003, it has never refused to pay AAA arbitration fees and costs – other than in
14 this one instance." Id. at 7 (citing Mendel Decl. ¶¶ 3-4).[3] Moreover, Defendant explicitly states
15 in its brief – and counsel reiterated this point at the motion hearing – that "[i]f this Court were to
16 order Hendricks to arbitrate his individual claims in accordance with his arbitration
17 agreement, [Defendant] would pay the full costs of that arbitration." Reply at 6.

---

[1] The Court notes that Green Tree speaks to the vindication of federal statutory rights, and that Plaintiff's rights under the CLRA and UCL – the basis for his argument that he is entitled to broad injunctive relief – are state rights. Id.; see also Kaltwasser v. AT&T Mobility LLC, No. 07-411, 2011 WL 4381748, at *5 (N.D. Cal. Sept. 20, 2011) ("it is not clear that Green Tree's solicitude for the vindication of rights applies to rights arising under state law").

[2] Plaintiff further cites to cases in which courts have applied Green Tree and found that plaintiffs had adequately demonstrated that the costs posed were prohibitive. See Opp'n at 2-4 (discussing, for example, In re American Express Merchants' Litig., 634 F.3d 187 (2d Cir. 2011), in which merchants opposed a motion to compel by arguing that individual arbitration would be cost-prohibitive). But it is not at all clear to the Court that those cases remain good law. The Second Circuit even issued an order in August 2011 stating that it was *sua sponte* considering rehearing the In re American Express Merchants' Litig. case in light of Concepcion. See In re American Express Merchants' Litig., No. 06-1871-CV (docket entry of 8/1/11).

[3] Plaintiff objects to Mendel's declaration as lacking personal knowledge. See Obj. (dkt. 48). But Mendel declares that she has personal knowledge based on her position of Lead Discovery Manager with Defendant's Legal Department. Mendel Decl. ¶¶ 1-2. That is sufficient under Federal Rule of Evidence 602, but even if it was not, Mendel's Supplemental Declaration (dkt. 53-3) certainly establishes her personal knowledge.

The second "loophole" Plaintiff identifies, Opp'n at 7, is also not present here. Plaintiff's argument that he will be on the hook for significant arbitral fees turns largely on his having sought a broad, class-wide injunction; but his agreement does not permit such relief. See Manchanda Decl. Ex. 1 at 1, 18. Plaintiff may only bring an individual action. Id. Therefore, Plaintiff would not have to pay $4,600 in fees and $151,725 to the arbitrators for non-monetary claims. See Opp'n at 8. The agreement states that Defendant "will pay all AAA filing, administration and arbitrator fees for any arbitration" properly initiated, unless the claim is "for greater than $75,000" or the arbitrator finds that the claim is frivolous. See Manchanda Decl. Ex. 1 at 16-17. Plaintiff claims that he was overcharged by $15 on his November 2010 bill. Opp'n at 1. Given that sum, his claim cannot be for more than $75,000, unless he brings a class action or seeks broad injunctive relief, both of which he cannot do. See Manchanda Decl. Ex. 1 at 18.[4]

Thus, there is no "risk" that [Plaintiff] will be saddled with prohibitive [arbitral] costs" that would "justify the invalidation of an arbitration agreement," see Green Tree, 531 U.S. at 91, nor that Plaintiff would "bear any type of expense . . . not required in court," see Armendariz, 24 Cal. 4th at 110-11.

Plaintiff's more general argument, that the cost of pursuing his case on an individual basis would be prohibitive, see, e.g., Opp'n at 10-11 ("Mr. Hendricks'[s] claims could not be discovered or presented in any forum without a substantial presuit investigation to test the accuracy of AT&T's billing system for data, which was done at a cost of $74,179.11"), is also foreclosed by Concepcion. Although Plaintiff is correct that Concepcion does not discuss either Green Tree or Armendariz by name, see Opp'n at 9, he is incorrect in interpreting the opinion as indifferent to this issue. As Defendant points out, Reply at 3 n.2,

---

[4] The Court further rejects Plaintiff's suggestion at the motion hearing that he is burdened by having to front the filing fee (under AT&T's agreement, Plaintiff pays the fee, and then "[a]fter AT&T receives notice . . . that you have commenced arbitration, it will promptly reimburse you"). See Manchanda Decl. Ex. 1 at 16. As defense counsel pointed out, the agreement provides that if consumers are "unable to pay this fee, AT&T will pay it directly upon receiving a written request." Id.

6

the respondents in Concepcion raised the issue of large expenses interfering with the vindication of statutory rights. See Brief for Resp'ts at 51, AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (U.S. Sept. 29, 2010) (No. 09-893), at 2010 WL 4411292 (citing Green Tree, 531 U.S. at 90). In addition, the dissent in Concepcion, 131 S.Ct. at 1761 (Breyer, J. dissenting), posed the question: "[w]hat rational lawyer would have signed on to represent the Concepcions in litigation for the possibility of fees stemming from a $30.22 claim?" See also id. (citing Carnegie v. Household v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004), for the proposition that "The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30").[5]

The majority explicitly considered the dissent's argument that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system" and answered that "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id. at 1753. As Judge Fogel reasoned in Kaltwasser, 2011 WL 4381748, at *5, "If the Concepcion majority had intended to allow for the plaintiffs to avoid class-action waivers by offering evidence about particular costs of proof they would face – essentially applying the underlying rationale of Discover Bank without relying on Discover Bank as a rule – one would expect it to have drawn attention to such a significant point in response to the dissent." Of course, it did not do so.

In addition, as Kaltwasser, 2011 WL 4381748, at *6, held, it is simply unworkable for "every court evaluating a motion to compel arbitration" to "have to make a fact-specific comparison of the potential value of a plaintiff's award with the potential cost of proving the plaintiff[']s case." District courts should not be faced with disputes over experts' qualifications, methodology, and rates at the motion to compel stage of litigation. See id.;

---

[5] The Court accepts Plaintiff's contention at the motion hearing that there was no presuit investigation involved in the Concepcion case. Nonetheless, this Court has confidence that the Supreme Court understood both that a presuit investigation is particularly expensive for a single litigant to underwrite, and that such an expense is a foreseeable and not-uncommon disadvantage of individual, versus class, actions. In any case, the expense of a presuit litigation is less of a concern where, as here, Plaintiff's counsel has brought numerous related suits.

see also Moses H. Cone Mem'l Hosp., 460 U.S. at 22 (discussing "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible"). These considerations led Judge Fogel to conclude:

> If Green Tree has any continuing applicability [post-Concepcion] it must be confined to circumstances in which a plaintiff argues that costs specific to the arbitration process, such as filing fees and arbitrator's fees, prevent her from vindicating her claims . . . Concepcion forecloses plaintiffs from objecting to class-action waivers in arbitration agreements on the basis that the potential cost of proving a claim exceed potential individual damages.

Kaltwasser, 2011 WL 4381748, at *6. This Court agrees. The Court adds that, even if Plaintiff arbitrates on an individual basis, Plaintiff could recover expert fees under his contract, because if the arbitrator awards him more than Defendant's last settlement offer, he would be entitled to at least $10,000, and Defendant would have to pay his attorney double his or her fees, and reimburse any expenses (including expert witness fees and costs), reasonably accrued. See Reply at 9 (citing Manchanda Decl. Ex. 1 at 17). The costs of pursuing Plaintiff's case are therefore not a basis for invalidating the agreements.

Accordingly, there is no basis for finding that the agreement is unenforceable for requiring Plaintiff to pay excessive costs.[6]

### B. Unconscionability

Plaintiff also argues that the arbitration agreement should not be enforced because it is unconscionable. Opp'n at 11-14. This argument is essentially a repackaging of Plaintiff's fees argument, and he admits as much. See id. at 11 ("courts sometimes shoehorn the Green Tree/Armendariz standards into an unconscionability analysis"). It therefore fails for the same reasons.

Unconscionability has both a procedural and a substantive component. Both components must be present before a court may refuse to enforce a contract. Armendariz, 24

---

[6] Put another way, Plaintiff has not met his "burden of showing the likelihood of incurring such costs." See Green Tree, 531 U.S. at 522.

8

Cal. 4th 83, at 114. However, they need not be present to the same degree; "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa." Id.

### 1. Procedural Unconscionability

Plaintiff argues that "procedural unconscionability analysis usually begins and ends with a determination that a contract is one of adhesion." Opp'n at 12. Defendant does not dispute this point, and it does seem to remain an accurate statement of the law even in light of the Supreme Court's observation in Concepcion. 131 S. Ct. at 1750, that "the times when consumer contracts were anything other than adhesive are long past." See, e.g., Al-Thani v. Wells Fargo & Co., No. 08-1745, 2009 WL 55442, at *7 (N.D. Cal. Jan. 7, 2009), citing Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 893 (9th Cir. 2002) ("[a] contract is procedurally unconscionable if it is a contract of adhesion."); Saincome v. Truly Nolen of Am., Inc., No. 11-CV-825, 2011 WL 3420604, at *4 (S.D. Cal. Aug. 3, 2011) (finding contract of adhesion satisfied "the procedural element of the unconscionability inquiry").

Because there is no dispute that the contract was one of adhesion, see Opp'n at 12-13, it was at least minimally procedurally unconscionable.

### 2. Substantive Unconscionability

Plaintiff next argues that the contract was substantively unconscionable for three reasons: (1) it requires him to pay excessive arbitral fees; (2) it restricts the arbitrator's ability to grant injunctive relief under the CLRA and UCL, and (3) its prohibition on class arbitration combined with the arbitral costs would preclude Plaintiff from seeking to assert his claims. Id. at 13-14. Plaintiff provides no further detail and cites to no authority in support of his argument.

An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "'one-sided' results." Armendariz, 24 Cal. 4th at 114. But Plaintiff has failed to identify an overly harsh provision or result of the agreement. As discussed above, the agreement – and its prohibition on class arbitration – does not require Plaintiff to pay

9

1 excessive arbitral fees and costs in order to bring an individual action. Although the
2 agreement does prevent the arbitrator from awarding class-wide injunctive relief, as
3 discussed below, this is permitted by Concepcion. See Arellano v. T-Mobile USA, Inc., No.
4 10-05663, 2011 WL 1842712, at *1 (N.D. Cal. May 16, 2011) (FAA "preempts California's
5 preclusion of public injunctive relief claims from arbitration.").

Accordingly, Plaintiff has not demonstrated that the contract was substantively unconscionable. Because a contract must be both procedurally and substantively unconscionable under Armendariz, 24 Cal. 4th 83, unconscionability does not bar enforcement of the agreement.

### C.     Unclean Hands

Plaintiff next argues that AT&T is barred from enforcing the arbitration agreement based on the doctrine of unclean hands. See Opp'n at 14-16. He provides four examples of AT&T's "repeated deceptive and inequitable conduct" which he argues are "specifically related to customers' arbitration rights." Id. at 15-16. They are: (1) representing that customers can initiate an arbitration with a $125 filing fee but actually requiring them to pay $4,600 whenever they seek injunctive relief; (2) representing that AT&T will pay all filing, administrative, and arbitrator fees but refusing to do so; (3) refusing to pay fees, which means that AAA will refuse to provide an arbitrator, which "makes it impossible for the customer to enforce their arbitration rights"; and (4) impairing customers' arbitration rights by pressuring and intimidating AAA administrators to impede progress on customers' arbitration demands. Id.

Defendant offers some explanations for such conduct, see Reply at 10-12 (tying much of the conduct to the arbitrations challenging the merger with T-Mobile), but the Court need not address them. "The misconduct which brings the unclean hands doctrine into operation must relate directly to the transaction" at issue and "affect the equitable relations between the litigants." Vacco Indus., Inc. v. Van Der Berg, 6 Cal. Rptr. 2d 602, 612 (Ct. App.1992); see also Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989) ("it is

fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made"). The conduct that Plaintiff complains of has not affected the equitable relations between these litigants, nor did it "relate directly to the transaction at issue," because none of it happened to Plaintiff. AT&T's conduct toward unnamed other customers who have sought to arbitrate is not before the Court.

Accordingly, the unclean hands does not apply to bar enforcement of the arbitration agreement.

### D. CLRA and UCL Claims

Finally, Plaintiff argues that he "seeks injunctive relief under the CLRA and UCL" and that "[t]hose claims are inarbitrable" under Broughton v. Cigna Healthplans of Calif., 21 Cal. 4th 1066, 1079-80 (1999) (CLRA) and Cruz v. PacifiCare Health Sys., Inc., 30 Cal. 4th 303, 316 (2003) (UCL). Opp'n at 16-18. This argument, too, fails under Concepcion, 131 S. Ct. at 1748, which found that the FAA preempts state law to the extent the state law would preclude "enforcement of arbitration agreements according to their terms so as to create streamlined proceedings," even if the state law is based on public policy.

Judge Alsup recently addressed the effect of Concepcion on California's law prohibiting arbitration of public injunctive relief claims, and concluded that the FAA preempts California law. See Arellano, 2011 WL 1842712, at *1. In Arellano, id., plaintiff brought a class action against T-Mobile, seeking injunctive relief, among other remedies, for claims brought under the CLRA and UCL. T-Mobile argued that the claims should be arbitrated based on the parties' arbitration agreement. Id. Plaintiff made several public policy arguments for why the CLRA and UCL claims were inarbitrable. Id. at *2. Judge Alsup, however, ruled that the FAA "preempts California's preclusion of public injunctive relief claims from arbitration, at least for actions in federal court." Id. at *1 ("The recent Concepcion decision compels preemption: 'When state law prohibits outright the arbitration

11

of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.'" (citing Concepcion, 131 S. Ct. at 1747)).

Plaintiff here makes a similar public policy argument as to why his CLRA and UCL claims are inarbitrable. See Opp'n at 16-18 ("if Mr. Hendricks proves that AT&T is systematically overbilling millions of California customers for data use, AT&T would argue the arbitrator is powerless to enjoin such unlawful billing with respect to anyone other than Mr. Hendricks alone."). But Concepcion, 131 S. Ct. at 1753, rejected this argument, holding that "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Several other courts in this district have followed suit. See Nelson v. AT&T Mobility LLC, No. 10-4802, 2011 WL 3651153, at *2 (N.D. Cal. Aug. 18, 2011) (enforcing arbitration clause "even though plaintiffs may argue that 'preclusion of injunctive relief on behalf of the class equates to preclusion of the ability to obtain effective [relief] – enjoining deceptive practices on behalf of the public in general'" and holding that the FAA preempts Broughton and Cruz); In re Apple and AT&T iPad Unlimited Data Plan Litigation, No. 10-2553, 2011 WL 2886407, at *4 (N.D. Cal. July 19, 2011) (rejecting Broughton and Cruz and holding that "Concepcion would seem to preempt California's arbitration exemption for claims requesting public injunctive relief"); Kaltwasser, 2011 WL 4381748, at *7 (same). And this Court recently reached this same conclusion in Meyer v. T-Mobile USA Inc., No. 10-5858, 2011 WL 4434810, at *4 (N.D. Cal. Sept. 23, 2011).

Accordingly, the CLRA and UCL do not bar enforcement of the arbitration agreement.[7]

---

[7] A week before the hearing date, Plaintiff filed a Motion for Leave to File Supplemental Brief Addressing Judicial Estoppel. See generally Motion (dkt. 51). Local Civil Procedure Rule 7-3(d) prohibits "additional memoranda, papers, or letters" to be filed after a reply has been filed, unless (1) new evidence has been submitted in the reply and the additional memoranda, paper or letter states a party's objections to the new evidence, or (2) the additional memoranda, paper or letter is "a relevant judicial opinion [that was] published after the date the opposition or reply was filed." Civ. L.R. 7-3(d). Neither of the exceptions to Local Rule 7-3(d) apply. Defendant does not oppose the supplemental brief. See dkt. 54. The Court finds, however, that the arguments Defendant made in opposing the arbitration of what it argues are class claims (as to the merger), are not inconsistent with the arguments it makes here in opposing the litigation of a class claim.

12

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion, COMPELLING arbitration and STAYING the case during arbitration.

**IT IS SO ORDERED.**

Dated: October 26, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE